McKEE, Chief Judge,
concurring.*
Although I join my colleagues’ analysis in its entirety, I write separately to highlight problems inherent in the text of the Racketeering Influenced Corrupt Organizations Act (“RICO”) that are exemplified by this complaint. My concern arises from the fact that the treble damage provision of RICO spawns claims that are not at all related to the congressional purpose underlying that statute. Although many have recognized this problem, Congress has yet to address it. I nevertheless remain hopeful that continued calls for a legislative response to problems endemic in RICO’s civil damage provision will one day alert Congress to the need to restrict the statute to the ills Congress thought it was addressing when it enacted this far reaching legislation.
I.
“RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime.” Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 498, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (citation omitted).
As is clear from my colleagues’ explanation of this Amended Complaint, this case is at once a landlord-tenant dispute, a nui *252 sanee claim, and an alleged conspiracy to unlawfully rent apartments to undocumented persons. Those allegations are a far cry from what Congress intended when it added certain immigration violations to the already expansive list of predicate acts that would support a civil RICO claim.
Bolmer rests his RICO claim solely upon alleged violations of the Immigration and Nationality Act (“INA”). RICO was amended to define “racketeering activity” to include: “any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens).... ” 18 U.S.C. § 1961(1)(F) (2006). Section 274, which is now a RICO predicate offense, prohibits the bringing in, transportation, harboring, or employment of undocumented aliens. 8 U.S.C. § 1324 (2006). “[A] violation of § 274 of the INA is one of the infrequently used ‘racketeering acts’ identified in RICO § 1961(1).” Paul Batista, Civil RICO Practice Manual, § 3.15 (3d ed. Supp.2010). As my colleagues explain, harboring and encouraging or inducing— the alleged predicate acts here — are ill-defined under the INA itself.
It is, nevertheless, clear that Congress did extend RICO’s predicate offenses to include specified immigration violations when it enacted the Antiterrorism and Effective Death Penalty Act of 1996 (“AED-PA”). Pub.L. No. 104-132, 110 Stat. 1214 (1996). In fact, § 433 of AEDPA is entitled: “Establishing Certain Alien Smuggling-Related Crimes as RICO-Predicate Offenses.” Those “RICO Amendments” primarily focus on unlawful assistance to undocumented persons entering the country and those who help them evade law enforcement while here.[1]
Congressional concern with smuggling organizations is evident in the text, history, and purpose of the AEDPA amendments to RICO. The House Committee Report on AEDPA explains:
The bill adds a number of immigration-related offenses as predicate offenses under the Racketeer Influenced Corrupt Organizations Act (“RICO”). The RICO statute is among the principal tools that Federal law enforcement officials use to combat organized crime. The amendment made by this section will extend the definition of “predicate *253 acts” to enable them to use the statute to combat alien smuggling organizations.
H.R.Rep. No. 104-22 (1995), 1995 WL 56411, at *6 (emphasis added). Predicate acts established by AEDPA thus reflect Congress’ desire to include smuggling “organizations” within RICO’s grasp. The amendments focus on the kind of activity such organizations engage in to smuggle aliens into the country. “The offenses added as RICO predicate act[s] are offenses involving fraud, false use, or forgery of passports, identification documents, or visas; offenses relating to peonage and slavery; offenses relating to retaliation against a witness, victim, or an information; and offenses relating to assisting illegal aliens to enter the country.” Id. at *16.
Thus, including certain immigration violations as predicate acts under RICO “enable[d] federal law enforcement officials to use the RICO law to combat alien smuggling operations.” Id. at *9. The action was necessary because “[organized crime rings in this country, with ties to others abroad, have developed to prey upon illegal immigrants who want to come to the United States.” 141 Cong. Rec. H1588 (daily ed. Feb. 10,1995) (statement of Rep. McCollum); see also Bobb v. Att’y Gen., 458 F.3d 213, 221 (3d Cir.2006) (noting that AEDPA targeted “[m]any of the crimes ... committed by persons involved in organized immigration crime[,] ... including] ... alien smuggling ... [and] trafficking in immigration and other documents----”) (citing H.R. Rep. 104-22, at *7); Sys. Mgmt., Inc. v. Loiselle, 91 F.Supp.2d 401, 408-09 (D.Mass.2000) (“(Section 274 of the Immigration and Nationality Act) bears the title ‘Bringing in and harboring certain aliens.’ It thus seems targeted against individuals who smuggle, conceal, or transport illegal aliens into the United States.”).
II.
In dressing this landlord-tenant dispute as a federal RICO claim and seeking treble damages, this plaintiff has joined countless others who have fashioned such claims out of disputes that have nothing whatever to do with subverting crime rings or criminal syndicates. Rather, we are here confronted with an everyday landlord-tenant dispute adorned as a racketeering claim complete with the obligatory treble damage request that is both the sine qua non and irresistible impulse of so many civil actions under RICO.
In Sedima, the Supreme Court warned: “in its private civil version, RICO is evolving into something quite different from the original conception of its enactors.” 473 U.S. at 500, 105 S.Ct. 3275 (citation omitted). This has occurred even though the congressional intent underlying RICO could not be clearer. Both the Act’s title and the legislative history demonstrate that Congress passed the statute to target organized crime. Id. at 524, 105 S.Ct. 3275 (Powell, J., dissenting); see also H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 248, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (“The occasion for Congress’ action [in enacting RICO] was the perceived need to combat organized crime.”). Congress therefore crafted the broad list of predicate offenses that trigger a RICO violation in order to create a weapon with sufficient flexibility to be effective in extricating society from the insidious tentacles of organized crime and all of its continually evolving mechanisms of infiltration and corruption. As we explained in United States v. Bergrin, 650 F.3d 257, 270-71 (3d Cir.2011):
Congress intended for RICO to apply to individuals who, through involvement in an enterprise, commit any combina *254 tion of the many and diverse predicate acts, whether the usual organized crime-type offenses (e.g., bribery, extortion, gambling), more violent crimes (e.g., murder, kidnapping), or more niche crimes (e.g., counterfeiting music or trafficking in illicit prescription drugs).
The broad array of crimes that Congress selected as RICO predicate offenses are thus intended to function as “hidden treasures — or buried landmines — ” that can be exploited by creative counsel in an appropriate case.[2]
However, the very strength of RICO— its breadth — now diffuses its focus. RICO’s treble damage provision has been seized upon to convert the statute into a hodgepodge of prohibitions that now function as a tripwire that offers the lure of treble recovery to all who can squeeze their claim into some combination of RICO’s “predicate acts.” The civil penalties in RICO have thus been transformed into a fulcrum that is used to pry treble damages out of causes of action originating in “divorce, trespass, legal and accounting malpractice, inheritance among family members, employment benefits and sexual harassment by a union.” William H. Rehnquist, Chief Justice of the United States, Remarks of the Chief Justice, Address Before the Eleventh Seminar on the Administration of Justice (Apr. 7, 1989), in 21 St. Mary’s L.J. 5, 11 (1989). In fact, “[m]ost of the civil suits filed under the statute have nothing to do with organized crime[;] [t]hey are garden-variety civil fraud cases of the type traditionally litigated in state courts.” Id. at 9.
In Sedima, the Court mentioned in a footnote that an ABA Task Force on RICO had “found that of the 270 known civil RICO cases at the trial court level [at that time], 40% involved securities fraud, 37% common-law fraud in a commercial or business setting, and only 9% [involved] ‘allegations of criminal activity of a type generally associated with professional criminals.’” 473 U.S. at 500 n. 16, 105 S.Ct. 3275. Similarly, “[a]nother survey of 132 published decisions found that 57 involved securities transactions and 38 [involved] commercial and contract disputes ....” Id. We can now add landlord-tenant disputes to the mix.
In the criminal arena, this proclivity for abuse is at least limited by prosecutorial discretion, the risk of losing credibility with jurors if the prosecution engages in “overkill” or overreaching, and the related risk of jury nullification. However, RICO’s civil remedy is not restricted by any such considerations.[3] Thus, it is not surprising that we are today faked with a claim that this landlord-tenant dispute is really a racketeering conspiracy that should entitle this tenant to treble damages under RICO.[4]
*255 III.
Some courts have tried to address this problem by relying on such traditional concepts as prudential standing.[5] One such effort involved requiring plaintiffs to establish “RICO standing” just as antitrust standing is required of a plaintiff suing for an antitrust violation under the Clayton Act. See Sedima, 473 U.S. at 485, 105 S.Ct. 3275. The Court of Appeals for the Second Circuit used that approach in Sedima in upholding the District Court’s dismissal of the civil RICO action there. The Court of Appeals reasoned that a RICO plaintiff must allege a separate “RICO injury” “just as an antitrust plaintiff must allege an ‘antitrust injury.’ ” Id. The Court of Appeals had imposed that requirement based on the legislative history and the strong congressional concern with providing additional tools against organized crime that lead to RICO’s enactment. Id. at 494,105 S.Ct. 3275.[6]
*256 The Supreme Court rejected that reasoning. In reviewing the legislative history of RICO, the Court noted that the treble damages provision was added to “enhance the effectiveness of [the Act’s prohibitions].” Id. at 487, 105 S.Ct. 8275 (internal quotation marks and citations omitted). The Court observed that several courts had struggled to define “racketeering injury,” but the Court concluded: “the difficulty of that task itself cautions against imposing such a requirement.” Id. at 494, 105 S.Ct. 3275 (footnote omitted). The Court explained:
[g]iven that “racketeering activity” [under the Act] consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a “racketeering injury” separate from the harm from the predicate acts. A reading of the statute belies any such requirement.... If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his[/ her] business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous “racketeering injury” requirement.
Sedima, 473 U.S. at 495, 105 S.Ct. 3275 (footnote omitted).[7] Thus, the Court instructed, “RICO is to be read broadly.” Id. at 497, 105 S.Ct. 3275.
Yet, despite rejecting a requirement of “RICO standing,” in Sedima, the Court nevertheless requires an injury sufficiently related to the alleged racketeering activity to justify allowing a treble damage claim to proceed under RICO. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). The plaintiff in Anza, brought a RICO action against a business competitor alleging that the latter had filed fraudulent tax returns with the state in order to reduce the amount of sales tax accruing from sales. Anza, 547 U.S. at 454, 126 S.Ct. 1991. With a reduced tax burden, the defendant could obtain a competitive advantage by selling its products at a lower price than the plaintiff who had to factor sales tax into the price it charged its customers. Id. The plaintiff alleged that the requisite predicate acts for RICO consisted of mail or wire fraud depending on whether the fraudulent returns were mailed or filed electronically. Id.
The Supreme Court rejected the claim because the alleged injury was too remote from the alleged racketeering activity. Id. at 457-58, 126 S.Ct. 1991. The direct victim of the predicate acts was the taxing authority, not the plaintiff. Id. Although plaintiff would not have suffered its injury “but for” the alleged racketeering activity, the defendant’s lower prices proximately caused any business injury to plaintiff, not the alleged fraud. Id. at 458-59, 126 S.Ct. 1991.
Although the Court’s approach was consistent with a prudential standing analysis, the Court did not even mention standing in its discussion except to refer to the district court’s reasoning. Rather, the Court relied on Sedima to explain that the “harm caused by predicate acts” must have a direct relationship to the alleged injury. Id. at 457, 126 S.Ct. 1991 (citing Sedima, *257 473 U.S. at 497, 105 S.Ct. 3275). The Court reiterated: “the essence of the [RICO] violation is the commission of those acts in connection with the conduct of an enterprise.” Id. (internal quotation marks omitted). Although the injury in Sedima was established by alleging an injury “by reason of’ the alleged racketeering activity, the injury in Anza was too attenuated from that activity to justify a RICO claim even though the plaintiff would not have suffered injury “but for” the racketeering activity. Anza, 547 U.S. at 457-59, 126 S.Ct. 1991.
The Court was also concerned that the plaintiffs lost sales could have resulted from any number of factors “other than [defendant’s] alleged acts of fraud.” Id. The Court reasoned that it would be extraordinarily difficult to properly apportion damages among the various factors that may have contributed to plaintiffs lost sales that were in addition to the defendant’s lower prices. Id.
The analysis in Anza was foreshadowed by the Court’s prior decision in Holmes. There, the Court had explained the practical and jurisprudential necessity of ensuring that alleged injuries were not too remote from the alleged racketeering acts to establish proximate cause for the plaintiffs injuries. 503 U.S. at 268-69, 112 S.Ct. 1311. The analysis in Anza flowed directly from the need to establish causation. The majority decision in Holmes did not mention prudential standing either, and the Court only referred to “standing” tangentially. See 503 U.S. at 263, 264, 270, 112 S.Ct. 1311.
Whether the analysis focuses on the nexus between the alleged injury and the alleged racketeering activity through the lens of proximate cause or through the lens of prudential standing, the only limitation on treble damage claims appears to be ensuring that the claimed injury is not too remote from the alleged predicate acts.[8] Thus, in Allegheny General Hospital v. Philip Morris, Inc., 228 F.3d 429 (3d Cir. 2000), we focused our inquiry on the nexus between predicate acts and injury. We there upheld the dismissal of various RICO claims brought by hospitals to recover unreimbursed medical expenses allegedly resulting from the defendant cigarette companies’ fraudulent claims about tobacco use and their alleged manipulation of nicotine content of cigarettes. Id. at 443-45. We relied upon our earlier decision in the “closely analogous” case of Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912 (3d Cir.1999). In the latter case, union welfare funds had asserted similar claims under RICO. 228 F.3d at 435. We explained in Allegheny that the plaintiffs’ standing depended on “[w]hether ... the alleged conspiracy proximately caused [the plaintiffs’] injuries.” Id.
More recently, in Hemi Group, LLC v. City of New York, — U.S. —, 130 S.Ct. 983, 175 L.Ed.2d 943 (2010), the Supreme Court specifically rejected a “but for” test of causation and reiterated that the RICO injury must be “by reason of’ the alleged RICO violation. Id. at 989; a concept that leads to a proximate cause analysis. That decision also focused on proximate cause under RICO rather than on prudential standing. The Court explained that “proximate cause for RICO purposes ... should be evaluated in light of its common-law foundations; proximate cause thus requires some direct relation between the injury asserted and the injurious conduct *258 alleged. A link that is too remote, purely contingent, or indirect is insufficient.” Id. at 989 (internal quotation marks and citations omitted).[9]
It nevertheless remains true under Sedima that all a plaintiff must allege to survive a motion to dismiss a claim for treble damages under RICO is that his/her injury occurred “by reason of’ the alleged predicate acts. See Sedima, 473 U.S. at 497, 105 S.Ct. 3275 (“Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.”) (footnote omitted). As I have explained, that hurdle is easily cleared in a multitude of actions that have nothing to do with organized crime in any of its many nefarious manifestations. For example, if the plaintiff here had been able to allege acts that amounted to actual “harboring” of aliens, his RICO claim would have survived a motion to dismiss even though there is absolutely nothing here to suggest a criminal organization is involved in the landlord’s alleged neglect.
IV.
Yet, as the Supreme Court has explained, the misuse of the statute cannot be traced to any ambiguity in the statutory text that would allow for a judicial remedy by reading the statute in a manner that more closely reflects congressional intent. “The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there.” BedRoc Ltd. v. United States, 541 U.S. 176, 184, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (internal quotation marks and bracket omitted). “[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.” Sedima, 473 U.S. at 499, 105 S.Ct. 3275 (citation omitted). Thus, it remains true that:
private civil actions under the statute are being brought almost solely against [businesses not implicated in organized crime], rather than against the archetypal, intimidating mobster. Yet this defect — if defect it is — is inherent in the statute as written, and its correction must lie with Congress. It is not for the judiciary to eliminate the private action in situations where Congress has provided it simply because plaintiffs are not taking advantage of it in its more difficult applications.
Id. at 499-500, 105 S.Ct. 3275 (footnote omitted).
Given the very legitimate and widespread concerns about how the treble damage provision of RICO is pushing RICO far beyond the parameters Congress intended, I join the chorus expressing the need for Congress to revisit this very important statute.[10] With reform, it can yet *259 be honed into a tool that will continue to be effective in remedying the havoc wreaked by organized crime while being less susceptible to being the remedy of choice whenever it appears that a defendant’s transgressions can be recast as racketeering predicates.
Congress has, in fact, recognized that a problem exists with RICO in its current form. See RICO Amendments Act of 1991, H.R.Rep. No. 102-312 (1991), 1991 WL 243408 at *6-8; Rehnquist, Remarks, supra, at 12. Three possible reforms have been suggested: “[t]o amend the basic criminal law; to make civil RICO unavailable or more difficult to use for numerous categories of offenses covered by criminal RICO; or to make changes to civil RICO which attempt to emulate the results attained by prosecutorial discretion in the criminal RICO area.” Id. at *7.[11]
Although none of those approaches has yet been adopted into law, I continue to hope that Congress will address the problems that have become apparent in the statute as it is now written. It is for that reason alone that I write; nothing else needs to be added to the majority opinion.

 Judges Fuentes and Greenberg join Chief Judge McKee in this concurring opinion.

. See AEDPA § 433.
Establishing Certain Alien Smuggling-Related Crimes as RICO-Predicate Offenses: Section 1961(1) of title 18, United States Code, is amended—
(1) by inserting "section 1028 (relating to fraud and related activity in connection with identification documents) if the act indictable under section 1028 was committed for the purpose of financial gain,” before "section 1029”;
(2) by inserting "section 1542 (relating to false statement in application and use of passport) if the act indictable under section 1542 was committed for the purpose of financial gain, section 1543 (relating to forgery or false use of passport) if the act indictable under section 1543 was committed for the purpose of financial gain, section 1544 (relating to misuse of passport) if the act indictable under section 1544 was committed for the purpose of financial gain, section 1546 (relating to fraud and misuse of visas, permits, and other documents) if the act indictable under section 1546 was committed for the purpose of financial gain, sections 1581-1588 (relating to peonage and slavery),” after "section 1513 (relating to retaliating against a witness, victim, or an informant),”;
(3) by striking "or” before "(E)”; and
(4) by inserting before the period at the end the following: ", or (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain[.]”.

. Batista, supra, § 3.15.

. See Rehnquist, Remarks, supra, at 10 ("[TJhere is no such thing as prosecutorial discretion to limit the use of civil RICO by plaintiffs’ attorneys.”).
Even though one could argue that jury nullification plays a role in deterring abuse in the civil arena as well, common sense would suggest that the very different dynamics that are at work there make jury nullification or fear of overreaching far less important to determining how to structure a civil suit when jurors know "it’s only money.” Moreover, strategic considerations such as settlement posture may play a far more important role in deciding how to draft a civil complaint than concerns about overreaching or jury nullification.

. I do not suggest that landlord-tenant disputes and organized crime are necessarily mutually exclusive. The legislative history of RICO illustrates that organized crime is more than capable of injecting its poisonous proboscis into almost any "enterprise,” including the business of renting property. See e.g., Swistock v. Jones, 884 F.2d 755, 759 (3d Cir. *255 1989) (reversing district court dismissal of RICO claim of inducing plaintiffs to enter into a lease and make payments under the lease); Charron v. Pinnacle Grp. N.Y. LLC, 269 F.R.D. 221, 234 (S.D.N.Y.2010) ("Defendants are correct that there is an aspect of this case that implicates individualized landlord-tenant disputes. But each landlord-tenant dispute is, according to Plaintiffs, more than just that; it is one of the hundreds, if not thousands, of pixels forming something larger, more uniform, and far more serious — a pattern of racketeering actionable under RICO. This is, in short, a RICO class action brought in federal district court, not a collection of landlord-tenant disputes....").
Furthermore, creative, counsel can hardly be faulted for resorting to this statute in representing clients as long as the statute remains as broad as it is now. See Sedima, 473 U.S. at 504, 105 S.Ct. 3275 (Marshall, J„ dissenting) (“[Ljitigants, lured by the prospect of treble damages and attorney's fees, have a strong incentive to invoke RICO’s provisions whenever they can allege in good faith” two predicate acts from the statute’s substantial list of predicate offenses.); Rehnquist, Remarks, supra, at 12 ("RICO’s treble damages provisions create a powerful incentive for attorneys to attempt to bring facts traditionally thought to establish other causes of action within the ambit of the statute.”). Thus, I do not suggest counsel for this plaintiff has acted improperly in fashioning this claim as a RICO violation.

. Standing involves constitutional, prudential, and often statutory limitations on who may bring a claim in federal court. Allen v. Wright, 468 U.S. 737, 750-51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); see also The Pitt News v. Fisher, 215 F.3d 354, 359 (3d Cir.2000).
The constitutional component [of standing], derived from the Art. Ill case or controversy requirement, requires a plaintiff to demonstrate that he or she suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.
* * *
Under certain circumstances, prudential, as opposed to constitutional, standing considerations limit a plaintiff's ability to bring suit. These prudential considerations are a set of judge-made rules forming an integral part of judicial self-government. The aim of this form of judicial self-governance is to determine whether the plaintiff is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.
Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 225 (3d Cir.1998) (internal quotation marks and citations omitted).

. The Supreme Court noted that: "[i]n summarizing the bill [that became RICO] on the House floor, its sponsor described the treble damages provision as 'another example of the antitrust remedy being adapted for use against organized criminality.’ ” Sedima, 473 U.S. at 487, 105 S.Ct. 3275 (citing 116 Cong. Rec. 35295 (1970)) (statement of Rep. Poff). The Senate did not object to the inclusion of treble damages because, as the Senate sponsor noted, it "would be 'a major new tool in extirpating the baneful influence of organized crime in our economic life.’ ” Sedima, 473 U.S. at 488, 105 S.Ct. 3275 (citing 116 Cong. Rec. at 25190) (statement of Senator McClellan).

. The Court considered, but rejected any contention that Congress did not understand the implications of the treble damages provision. The Court reasoned that the provision was not enacted unnoticed and concluded that the statute’s silence on the import of the provision was irrelevant because ’’congressional silence, no matter how 'clanging,' cannot override the words of the statute.” Sedima, 473 U.S. at 495 n. 13, 105 S.Ct. 3275.

. "The Supreme Court has explained that the injury and causation requirements of § 1964(c) are aspects of RICO standing.” In re Sunrise Sec. Lit., 916 F.2d 874, 878-89 (3d Cir. 1990) (citations omitted).

. In Hemi Group, the City of New York brought a RICO claim against an out of state retailer who sold cigarettes over the internet to New York City residents without disclosing the names of the buyers to the taxing authorities in New York City as required by federal law. The taxing authorities would have used that information to collect the sales tax on the cigarettes that would otherwise go uncollected. The Court held that any economic injury the City may have suffered by the allegedly fraudulent conduct was not "by reason of” the alleged predicate acts because any failure to disclose was simply too remote to be the proximate cause of the City’s injury. 130 S.Ct. at 988-89.

. See, e.g., Ideal Steel Supply Corp. v. Anza, 652 F.3d 310, 328 (2d Cir.2011) (Cabranes, J., dissenting) ("We encounter here another chapter in the long saga of civil RICO and its discontents. Since its enactment in 1970, the civil RICO statute, Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, has exasperated generations of federal judges and practitioners and generated a vast, and often skeptical, literature”); *259 Rehnquist, Remarks, supra, at 13 (“I think that the time has arrived for Congress to enact amendments to civil RICO to limit its scope to the sort of wrongs that are connected to organized crime, or have some other reason for being in federal court”); William H. Rehnquist, Get Rico Cases Out of My Courtroom, Wall St. J., May 19, 1989, at A14; David B. Sentelle, Civil RICO: The Judges’ Perspective, and Some Notes on Practice for North Carolina Lawyers, 12 Campbell L.Rev. 145, 148 (1990) ("[Ejvery single district judge with whom I have discussed the subject (and I’m talking in the dozens of district judges from across the country) echoes the entreaty expressed in the Chief Justice’s title in The Wall Street Journal.”); see also Rehnquist, Remarks, supra, at 13 ("Each of the three branches — through court opinions, legislative proposals, or submissions to Congress — has recently expressed recognition of the need for reforming civil RICO.”).

. "Some individuals have even suggested that in view of RICO's treble damages provisions, the statute should be amended to allow for equally generous sanctions for frivolous claims.” Id. at 12. I take no position on specific proposals, but encourage Congress to be as creative in its solutions as litigants have been in their use of the statute.