Chief Justice Roberts
delivered the opinion of the Court in part.
The city of New York (City) taxes the possession of cigarettes. Hemi Group, based in New Mexico, sells cigarettes online to residents of the City. Neither state nor city law requires Hemi to charge, collect, or remit the tax, and the purchasers seldom pay it on their own. Federal law, however, requires out-of-state vendors such as Hemi to submit customer information to the States into which they ship the cigarettes.
Against that backdrop, the City filed this lawsuit under the Racketeer Influenced and Corrupt Organizations Act (RICO), alleging that Hemi failed to file the required customer information with the State. That failure, the City argues, constitutes mail and wire fraud, which caused it to lose tens of millions of dollars in unrecovered cigarette taxes. Because the City cannot show that it lost the tax revenue *5 “by reason of” the alleged RICO violation, 18 U. S. C. § 1964(c), we hold that the City cannot state a claim under RICO. We therefore reverse the Court of Appeals’ decision to the contrary.
I
A
This case arises from a motion to dismiss, and so we accept as true the factual allegations in the City’s second amended complaint. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163, 164 (1993).
New York State authorizes the City of New York to impose its own taxes on cigarettes. N. Y. Unconsol. Law Ann. §9436(1) (West Supp. 2009). Under that authority, the City has levied a $1.50 per pack tax on each standard pack of cigarettes possessed within the City for sale or use. N. Y. C. Admin. Code §ll-1302(a) (2008); see also Record A1016. When purchasers buy cigarettes from in-state vendors, the seller is responsible for charging, collecting, and remitting the tax. N. Y. Tax Law Ann. §471(2) (West Supp. 2009). Out-of-state vendors, however, are not. Ibid.; see New York v. Smokes-Spirits.com, Inc., 541 F. 3d 425, 432-433 (CA2 2008). Instead, the City is responsible for recovering, directly from the customers, use taxes on cigarettes sold outside New York. That can be difficult, as those customers are often reluctant to pay and tough to track down. One way the City can gather information that would assist it in collecting the back taxes is through the Jenkins Act, ch. 699, 63 Stat. 884, as amended by 69 Stat. 627. That Act requires out-of-state cigarette sellers to register and to file a report with state tobacco tax administrators listing the name, address, and quantity of cigarettes purchased by state residents. 15 U. S. C. §§ 375-378.
New York State and the City have executed an agreement under which both parties undertake to “cooperate fully with *6 each other and keep each other fully and promptly informed with reference to any person or transaction subject to both State and City cigarette taxes including Conformation obtained which may result in additional cigarette tax revenue to the State or City provided that the disclosure of that information is permissible under existing laws and agreements.” Record A1003. The City asserts that under that agreement, the State forwards Jenkins Act information to the City. Id., at A998; Second Amended Compl. ¶ 54. That information helps the City track down purchasers who do not pay their taxes. Id., ¶¶ 58-59.
Hemi Group is a New Mexico company that sells cigarettes online. Hemi, however, does not file Jenkins Act information with the State. The City alleges that this failure has cost it “tens if not hundreds of millions of dollars a year in cigarette excise tax revenue.” Record A996. Based on Hemi’s failure to file the information with the State, the City filed this federal RICO claim.
B
RICO provides a private cause of action for “[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.” 18 U. S. C. § 1964(c). Section 1962, in turn, contains RICO’s criminal provisions. Specifically, § 1962(c), which the City invokes here, makes it “unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity.” “[Racketeering activity” is defined to include a number of so-called predicate acts, including the two at issue in this case — mail and wire fraud. See §1961(1).
The City alleges that Hemi’s “interstate sale of cigarettes and the failure to file Jenkins Act reports identifying those sales” constitute the RICO predicate offenses of mail and *7 wire fraud in violation of § 1962(c), for which § 1964(c) provides a private cause of action. Record A980. Invoking that private cause of action, the City asserts that it has suffered injury in the form of lost tax revenue — its “business or property” in RICO terms — “by reason of” Hemi’s fraud.
Hemi does not contest the City’s characterization of the Jenkins Act violations as predicate offenses actionable under 11964(c). (We therefore assume, without deciding, that failure to file Jenkins Act material can serve as a RICO predicate offense.) Instead, Hemi argues that the City’s asserted injury — lost tax revenue — is not “business or property” under RICO, and that the City cannot show that it suffered any injury “by reason of” the failure to file Jenkins Act reports.
The District Court dismissed the City’s RICO claims, determining that Hemi owner and officer Kai Gachupín did not have an individual duty to file Jenkins Act reports, and thus could not have committed the alleged predicate acts. New York v. Nexicon, Inc., No. 03 CV 383 (DAB), 2006 WL 647716, *7-*8 (SDNY, Mar. 15, 2006). The District Court therefore held that the City could not establish that Hemi and Gachupín formed an “enterprise” as required to establish RICO liability. Id., at *7-* 10. Because it dismissed on that ground, the District Court did not address whether the City’s loss of tax revenue constitutes an injury to its “business or property” under § 1964, or whether that injury was caused “by reason of” Hemi’s failure to file the Jenkins Act reports.
The Second Circuit vacated the District Court’s judgment and remanded for further proceedings. The Court of Appeals held that the City had established that Gachupín and Hemi operated as an “enterprise” and that the enterprise committed the predicate RICO acts of mail and wire fraud, based on the failure to file the Jenkins Act material with the State. 541 F. 3d, at 447-448. The court also determined that the City’s asserted injury, lost tax revenue, was “busi *8 ness or property” under RICO. Id., at 444-445. And that injury, the court concluded, came about “by reason of” the predicate mail and wire frauds. Id., at 440-444. The City thus had stated a viable RICO claim. Judge Winter dissented on the ground that the alleged RICO violation was not the proximate cause of the City’s injury. Id., at 458-461.
Hemi filed a petition for certiorari, asking this Court to determine whether the City had been “directly injured in its 'business or property”’ by reason of the alleged mail and wire frauds. Pet. for Cert. i. We granted that petition. 556 U. S. 1220 (2009).
II
Though framed as a single question, Hemi’s petition for certiorari raises two distinct issues: First, whether a loss in tax revenue is “business or property” under 18 U. S. C. § 1964(c); and second, whether the City's asserted injury came about “by reason of” the allegedly fraudulent conduct, as required by § 1964(c). We determine that the City cannot satisfy the causation requirement — that any injury the City suffered must be “by reason of” the alleged frauds— and therefore do not decide whether the City’s allegations of lost tax revenue constitute an injury to its “business or property.”
A
In Holmes v. Securities Investor Protection Corporation, 503 U. S. 258 (1992), we set forth the standard of causation that applies to civil RICO claims. In that case, we addressed a RICO claim brought by Securities Investor Protection Corporation (SIPC) against defendants whom SIPC alleged had manipulated stock prices. Id., at 262-263. SIPC had a duty to reimburse customers of certain registered broker-dealers in the event the broker-dealers were unable to meet their financial obligations. Id., at 261. When the conspiracy by the stock manipulators was detected, stock prices collapsed, and two broker-dealers were unable to meet *9 their obligations to their customers. SIPC, as insurer against that loss, ultimately was on the hook for nearly $13 million to cover the customers’ claims. The Court held that SIPC could not recover against the conspirators because it could not establish that it was injured “by reason of” the alleged fraud, as that phrase is used in RICO.
We explained that, to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense “not only was a ‘but for’ cause of his injury, but was the proximate cause as well.” Id., at 268. Proximate cause for RICO purposes, we made dear, should be evaluated in light of its common-law foundations; proximate cause thus requires “some direct relation between the injury asserted and the injurious conduct alleged.” Ibid. A link that is “too remote,” “purely contingent,” or “indirec[t]” is insufficient. Id., at 271, 274.
Applying that standard, we rejected SIPC’s RICO claim. The alleged conspiracy, we held, directly harmed only the broker-dealers; SIPC’s injury, on the other hand, was “purely contingent” on that harm. Id., at 271. The connection between the alleged conspiracy and SIPC’s injury was therefore “too remote” to satisfy RICO’s direct relationship requirement. Ibid.
The City’s causal theory is far more attenuated than the one we rejected in Holmes. According to the City, Hemi committed fraud by selling cigarettes to city residents and failing to submit the required customer information to the State. Without the reports from Hemi, the State could not pass on the information to the City, even if it had been so inclined. Some of the customers legally obligated to pay the cigarette tax to the City failed to do so. Because the City did not receive the customer information, the City could not determine which customers had failed to pay the tax. The City thus could not pursue those customers for payment. The City thereby was injured in the amount of the portion of back taxes that were never collected. See Record A996.
*10 But as we reiterated in Holmes, “[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step.” 503 U. S., at 271-272 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U. S. 519, 534 (1983), in turn quoting Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 533 (1918); internal quotation marks omitted). Our cases confirm that the “general tendency” applies with full force to proximate cause inquiries under RICO. Holmes, supra, at 271-272; see also Bridge v. Phoenix Bond & Indemnity Co., 553 U. S. 639, 657-659 (2008); Anza v. Ideal Steel Supply Corp., 547 U. S. 451, 460-461 (2006). Because the City’s theory of causation requires us to move well beyond the first step, that theory cannot meet RICO’s direct relationship requirement.
Our decision in Anza, supra, confirms that the City’s theory of causation is far too indirect. There we considered a RICO claim brought by Ideal Steel Supply against its competitor, National Steel Supply. Ideal alleged that National had defrauded New York State by failing to charge and remit sales taxes, and that National was thus able to undercut Ideal’s prices. The lower prices offered by National, Ideal contended, allowed National to attract customers at Ideal’s expense. Id., at 458.
Finding the link between the fraud alleged and injury suffered to be “attenuated,” we rejected Ideal’s claim. Id., at 459. “The direct victim of this conduct,” we held, was “the State of New York, not Ideal.” Id., at 458. “It was the State that was being defrauded and the State that lost tax revenue as a result.” Ibid. We recognized that Ideal had asserted “its own harms when [National] failed to charge customers for the applicable sales tax.” Ibid. But the cause of Ideal’s harm was “a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State).” Ibid. The alleged violation therefore had not “led directly to the plaintiff’s injuries,” and Ideal accordingly had failed to meet RICO’s “requirement of a di *11 reet causal connection” between the predicate offense and the alleged harm. Id., at 460-461.
The City’s claim suffers from the same defect as the claim in Anza. Here, the conduct directly responsible for the City’s harm was the customers’ failure to pay their taxes. And the conduct constituting the alleged fraud was Hemi’s failure to file Jenkins Act reports. Thus, as in Anza, the conduct directly causing the harm was distinct from the conduct giving rise to the fraud. See id., at 458.
Indeed, the disconnect between the asserted injury and the alleged fraud in this case is even sharper than in Anza. There, we viewed the point as important because the same party — National Steel — had both engaged in the harmful conduct and committed the fraudulent act. We nevertheless found the distinction between the relevant acts sufficient to defeat Ideal’s RICO elaim. Here, the City’s theory of liability rests not just on separate actions, but separate actions carried out by separate parties.
The City’s theory thus requires that we extend RICO liability to situations where the defendant’s fraud on the third party (the State) has made it easier for a fourth party (the taxpayer) to cause harm to the plaintiff (the City). Indeed, the fourth-party taxpayers here only caused harm to the City in the first place if they decided not to pay taxes they were legally obligated to pay. Put simply, Hemi’s obligation was to file the Jenkins Act reports with the State, not the City, and the City’s harm was directly caused by the customers, not Hemi. We have never before stretched the causal chain of a RICO violation so far, and we decline to do so today. See id., at 460-461; cf. Associated Gen. Contractors, supra, at 541, n. 46 (finding no proximate cause in the antitrust context where the plaintiff’s “harm stems most directly from the conduct of persons who are not victims of the conspiracy”).
One consideration we have highlighted as relevant to the RICO “direct relationship” requirement is whether better *12 situated plaintiffs would have an incentive to sue. See Holmes, supra, at 269-270. The State certainly is better situated than the City to seek recovery from Hemi. And the State has an incentive to sue — the State imposes its own $2.75 per pack tax on cigarettes possessed within the State, nearly double what the City charges. N. Y. Tax Law Ann. § 471(1) (West Supp. 2009). We do not opine on whether the State could bring a RICO action for any lost tax revenue. Suffice it to say that the State would have concrete incentives to try. See Anza, supra, at 460 (“Ideal accuses the Anzas of defrauding the State of New York out of a substantial amount of money. If the allegations are true, the State can be expected to pursue appropriate remedies”).
The dissent would have RICO’s proximate cause requirement turn on foreseeability, rather than on the existence of a sufficiently “direct relationship” between the fraud and the harm. It would find that the City has satisfied that requirement because “the harm is foreseeable; it is a consequence that Hemi intended, indeed desired; and it falls well within the set of risks that Congress sought to prevent.” Post, at 24 (opinion of Breyer, J.). If this line of reasoning sounds familiar, it should. It is precisely the argument lodged against the majority opinion in Anza. There, the dissent criticized the majority’s view for “permitting] a defendant to evade liability for harms that are not only foreseeable, but the intended consequences of the defendant’s unlawful behavior.” 547 U. S., at 470 (Thomas, J., concurring in part and dissenting in part). But the dissent there did not carry the day, and no one has asked us to revisit Anza.
The concepts of direct relationship and foreseeability are of course two of the “many shapes [proximate cause] took at common law,” Holmes, 503 U. S., at 268. Our precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm. Indeed, Anza and Holmes never even mention the concept of foreseeability.
*13 B
The City offers a number of responses. It first challenges our characterization of the violation at issue. In the City’s view, the violation is not merely Hemi’s failure to file Jenkins Act information with the State, but a more general “systematic scheme to defraud the City of tax revenue.” Brief for Respondent 42. Having broadly defined the violation, the City contends that it has been directly harmed by reason of that systematic scheme. Ibid.
But the City cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct. Otherwise our RICO proximate cause precedent would become a mere pleading rule. In Anza, for example, Ideal alleged that National’s scheme “was to give National a competitive advantage over Ideal.”. 547 U. S., at 454-455. But that allegation did not prevent the Court from concluding that National’s fraud directly harmed only the State, not Ideal. As the Court explained, Ideal could not “circumvent the proximate-cause requirement simply by claiming that the defendant’s aim was to increase market share at a competitor’s expense.” Id., at 460.[1]
Our precedent makes clear, moreover, that “the compensable injury flowing from a [RICO] violation... 'necessarily is the harm caused by [the] predicate acts.’ ” Id., at 457 (quoting Sedima, S. P. R. L. v. Imrex Co., 473 U. S. 479, 497 (1985)). In its RICO statement, the City alleged that Hemi’s failure to file Jenkins Act reports constituted the predicate act of mail and wire fraud. Record A980. The City went on to *14 allege that this predicate act “directly caused” its harm, id., at A996, but that assertion is a legal conclusion about proximate cause — indeed, the very legal conclusion before us. The only fraudulent conduct alleged here is a violation of the Jenkins Act. See 541 F. 3d, at 459 (Winter, J., dissenting). Thus, the City must show that Hemi’s failure to file the Jenkins Act reports with the State led directly to its injuries. This it cannot do.
The City also relies on Bridge, 553 U. S. 639. Bridge reaffirmed the requirement that there must be “a sufficiently direct relationship between the defendant’s wrongful conduct and the plaintiff’s injury.” Id., at 657. The case involved competing bidders at a county tax-lien auction. Because the liens were profitable even at the lowest possible bid, multiple bidders offered that low bid. (The bidding took the form of the percentage tax penalty the bidder would require the property owner to pay, so the lowest possible bid was 0%.) To decide which bidder would be awarded the lien, the county devised a plan to allocate the liens “on a rotational basis.” Id., at 643 (internal quotation marks omitted). But as we noted in that case, this created a “perverse incentive”: “Bidders who, in addition to bidding themselves, sen[t] agents to bid on their behalf [would] obtain a disproportionate share of liens.” Ibid. The county therefore prohibited bidders from using such agents. Ibid.
A losing bidder alleged that a competitor had defrauded the county by employing shadow bidders to secure a greater proportion of liens than it was due. We held that the bidder-plaintiff had met RICO’s causation requirement. Distinguishing that claim from the one at issue in Anza, we noted that the plaintiff’s theory of causation in Bridge was “straightforward”: Because of the zero-sum nature of the auction, and because the county awarded bids on a rotational basis, each time a fraud-induced bid was awarded, a particular legitimate bidder was necessarily passed over. 553 U. S., at 647, 658. The losing bidders, moreover, “were the only *15 parties injured by petitioners’ misrepresentations.” Id., at 658. The county was not; it received the same revenue regardless of which bidder prevailed.
The City’s theory in this case is anything but straightforward: Multiple steps, as we have detailed, separate the alleged fraud from the asserted injury. And in contrast to Bridge, where there were “no independent factors that account[ed] for [the plaintiff’s] injury,” ibid., here there certainly were: The City’s theory of liability rests on the independent actions of third and even fourth parties.
The City at various points during the proceedings below described its injury as the lost “opportunity to tax” rather than “lost tax revenue.” It is not clear that there is a substantive distinction between the two descriptions. In any event, before this Court, the City’s argument turned on lost revenue, not a lost opportunity to collect it. See, e. g., Brief for Respondent i (“Counter-Question Presented[:] Does the City of New York have standing under RICO because lost tax revenue constitutes a direct injury to the City’s “business or property’ in accord with the statute, 18 U. S. C. § 1964(c), and this Court’s authority?”); id., at 40 (“[T]he City alleges that it has been injured (the loss of tax revenues) by defendants’ RICO violations”). Indeed, in its entire brief on the merits, the City never uses the word “opportunity” (or anything similar) to describe its injury.
Perhaps the City articulated its argument in terms of the lost revenue itself to meet Hemi’s contention that an injury to the mere “opportunity to collect” taxes fell short of RICO’s injury to “property” requirement. Brief for Petitioners 25 (“The opportunity to collect taxes from those who did owe them... falls within a class of expectation interests that do not qualify as injury to business or property and therefore do not confer civil RICO standing” (internal quotation marks omitted)); see Cleveland v. United States, 531 U. S. 12, 15 (2000) (“It does not suffice ... that the object of the fraud may become property in the recipient’s hands; for *16 purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim”).
That is not to say, however, that the City would fare any better on the causation question had it framed its argument in terms of a lost opportunity. Hemi’s filing obligation would still be to the State, and any harm to the City would still be caused directly by the customers’ failure to pay their taxes. See 541 F. 3d, at 461 (Winter, J., dissenting). Whatever the City’s reasons for framing its merits arguments as it has, we will not reformulate them for it now.[2]
In a final effort to save its claim, the City has shifted course before this Court. In its second amended complaint and RICO statement, the City relied solely on Hemi’s failure to file Jenkins Act reports with the State to form the basis of the predicate act mail and wire frauds. See Second Amended Compl. ¶¶99, 101, 118, 125; Record A980-A982. Before this Court, however, the City contends that Hemi made affirmative misrepresentations to city residents, which, the City now argues, comprise part of the RICO predicate mail and wire frauds. See Brief for Respondent 42-43. The City’s counsel pressed the point at oral argument, asserting that the City’s injury was “caused by the seller’s misrepresentation, which encourages the purchasers not to pay taxes.” Tr. of Oral Arg. 44.
*17 The City, however, affirmatively disavowed below any reliance on misrepresentations to form the predicate RICO violation. The alleged false statements, the City there stated, “are evidence of the scheme to defraud, but are not part of the fraud itself.... [T]he scheme to defraud would exist even absent the statements.” Record A980. The City reiterated the point: “The scheme consists of the interstate sale of cigarettes and the failure to file Jenkins Act reports identifying those sales.” Ibid. “Related to the fraud, but not a circumstance 'constituting’ the fraud, the defendants inform customers that [their] purchases will be concealed, and also seek to convince their customers that no taxes are owed by claiming, falsely, that the sales are tax-free.” Id., at A982. Not only did the City disclaim any reliance upon misrepresentations to the customers to form the predicate acts under RICO, but the City made clear in its second amended complaint that its two RICO claims rested solely on the Jenkins Act violations as the predicate acts. See Second Amended Compl. ¶¶ 118,125. Because the City defined the predicate act before the District Court as Hemi’s failure to file the Jenkins Act reports, and expressly disavowed reliance on the alleged misrepresentations themselves as predicate acts, we decline to consider Hemi’s alleged misstatements as predicate acts at this late stage.
* * *
It bears remembering what this case is about. It is about the RICO liability of a company for lost taxes it had no obligation to collect, remit, or pay, which harmed a party to whom it owed no duty. It is about imposing such liability to substitute for or complement a governing body’s uncertain ability or desire to collect taxes directly from those who owe them. And it is about the fact that the liability comes with treble damages and attorney’s fees attached. This Court has interpreted RICO broadly, consistent with its terms, but we have also held that its reach is limited by the “require *18 ment of a direct causal connection” between the predicate wrong and the harm. Anza, 547 U. S., at 460. The City’s injuries here were not caused directly by the alleged fraud, and thus were not caused “by reason of” it. The City, therefore, has no RICO claim.
The judgment of the Court of Appeals for the Second Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Sotomayor took no part in the consideration or decision of this case.

 Even if we were willing to look to Hexni’s intent, as the dissent suggests we should, the City would fare no better. Hemi’s aim was not to defraud the aty (or the State, for that matter) of tax revenue, but to sell more cigarettes. Hemi itself neither owed taxes nor was obliged to collect and remit them. This all suggests that Hemi’s alleged fraud was aimed at Hemi’s competitors, not the City. But Anza teaches that the competitors’ injuries in such a case are too attenuated to state a RICO claim.

 The dissent recognizes that its position poses the troubling specter of turning RICO into a tax collection statute. Post, at 29 (opinion of Breyer, J.). The dissent’s answer looks largely to prosecution policy set forth in the Federal Department of Justice Guidelines, which are, of course, not only changeable, but have no applicability whatever to state or local governments. Under the decision below and the dissent’s position, RICO could be used as a tax collection device based solely on the failure to file reports under the Jenkins Act, which itself provides quite limited remedies. See 15 U. S. C. § 377 (providing that a violation of the Jenkins Act may be punished as a misdemeanor with a fine up to $1,000 and imprisonment for no more than six months). And that device would be available not only to the State, to which the reports were due, but also to the City, to which Hemi owed no duty under the Act and to which it owed no taxes.