[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 13-13284
Non-Argument Calendar

D.C. Docket No. 9:12-cv-80896-KAM

CORCEL CORPORATION, INC.,

Plaintiff-Appellant,

versus

FERGUSON ENTERPRISES, INC.,
A Virginia Corporation,
LINE-TEC, INC.,
A Florida Corporation,
AKA SERVICES, INC.,
A Florida Corporation,

Defendants-Appellees.

Appeal from the United States District Court for
the Southern District of Florida

(March 24, 2014)

**ON PETITION FOR REHEARING**

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

PER CURIAM:

We vacate our previous opinion, filed February 7, 2014, and substitute this opinion in its place.

Appellant-Plaintiff Corcel Corporation, Inc. ("Corcel") sued Appellees-Defendants Ferguson Enterprises, Inc. ("Ferguson"), Line–Tec, Inc. ("LT") and AKA Services, Inc. ("AKA") (collectively "the defendants") for alleged violations of federal and state Racketeer Influenced and Corrupt Organizations Act ("RICO") laws. The district court granted defendants' Rule 12(b)(6) motions to dismiss plaintiff Corcel's complaint, and Corcel appealed. After review of the entire record on appeal and upon consideration of the parties' briefs, we reverse the district court's Rule 12(b)(6) dismissal.

## I. FACTUAL BACKGROUND[1]

Plaintiff Corcel and the defendants are business competitors in the plumbing supply and construction trade. Specifically, plaintiff Corcel, defendant Ferguson,

---

[1] We present the facts as alleged in plaintiff Corcel's complaint. At this point in the litigation, we must assume the facts set forth in plaintiff Corcel's complaint are true. See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453, 126 S. Ct. 1991, 1994 (2006) (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1281 n.1 (11th Cir. 2006). Because we must accept the allegations of plaintiff Corcel's complaint as true, we recognize that "the facts" recited in this opinion may not be the actual facts.

2

and defendant LT are all business competitors who supply materials used in the plumbing trade.  Plaintiff Corcel competed with defendants Ferguson and LT to sell plumbing materials to Palm Beach County, Florida ("the County").

Defendant AKA is a prime construction contractor who competed for the County's construction contracts.  Defendants Ferguson and LT were defendant AKA's subcontractors on its construction contracts.  Defendant AKA competed with an unnamed prime contractor for the County's construction contracts.  Plaintiff Corcel was the subcontractor to that unnamed prime contractor.

Plaintiff Corcel alleges that the defendants formed two enterprises to fraudulently procure the County's plumbing supply and construction contracts through improper use of the County's Small Business Enterprise Program ("SBE Program").

## A.    The County's SBE Program

The County adopted its SBE Program to provide assistance and enhanced opportunities to small businesses.  Under the County's SBE Program, the County can certify businesses meeting certain criteria (such as revenue- and geography-based requirements) as "small business enterprises" ("SBEs").  To be certified as an SBE, a business must—among other things—perform a "commercially useful business function" and cannot be a mere "conduit" between the County and a non-

3

SBE.  To obtain SBE certification, a business must provide the County with an affidavit attesting to the business's eligibility for SBE certification.

Under the County's SBE Program, certified SBEs received a 10% preference over non-SBEs when the County evaluated bids for direct supply contracts.  That is, if an SBE bid no more than 10% above the amount that the lowest non-SBE bid, the County awarded the contract to the SBE even though the non-SBE was the lower bidder.  For construction contracts where no prime contractor was an SBE, the prime contractor with the greatest participation from SBE subcontractors received a 10% preference over other prime contractors.

**B.    The Parties' SBE Status**

At all relevant times, plaintiff Corcel was a certified SBE.  According to plaintiff Corcel, defendant LT was a certified SBE even though defendant LT knew that it was ineligible for SBE status.  Defendant Ferguson and defendant AKA were not certified SBEs.

**C.    Ferguson-LT Enterprise**

Defendants Ferguson and LT formed an enterprise (the "Ferguson-LT enterprise") to (1) fraudulently procure and maintain defendant LT's SBE certification from the County, (2) allow defendant LT to receive SBE bid preferences and win project awards from the County, and (3) allow defendant Ferguson to make sales through defendant LT to the County.  In the Ferguson-LT

4

enterprise, defendant LT was a mere conduit who performed no commercially useful business function. As such, defendant LT was ineligible for SBE status.

To obtain defendant LT's SBE certification, defendants Ferguson and LT executed their fraudulent scheme by (1) soliciting false and misleading letters from product manufacturers, (2) preparing false affidavits, (3) altering and falsifying manufacturers' product packing slips, and (4) repeatedly submitting these false documents to the County. Defendants Ferguson and LT used the United States mail and interstate wires to accomplish these acts.

The County relied on defendants Ferguson and LT's false documents and approved defendant LT's application for SBE certification. Defendant LT's SBE certification gave defendant LT the benefits of the County's SBE Program, including the 10% bidding advantage. As a result of defendant LT's 10% SBE advantage, the County awarded defendant LT multiple supply contracts. If defendant LT had not been certified as an SBE, the County would have awarded these contracts to plaintiff Corcel because plaintiff Corcel was the next lowest SBE bidder.

## D.    AKA-Ferguson-LT Enterprise

Defendants AKA, Ferguson, and LT formed an enterprise (the "AKA-Ferguson-LT enterprise") to (1) use defendant LT's fraudulently procured SBE

5

certification; (2) allow defendant AKA, as prime contractor, to receive SBE bid preferences based on defendant LT's presence as defendant AKA's subcontractor; and (3) win construction contract awards from the County for the mutual benefit of all three defendants. In the AKA-Ferguson-LT enterprise, defendant LT was a mere conduit who performed no commercially useful business function. As such, defendant LT was ineligible for SBE status.

The defendants executed their fraudulent scheme by listing defendant LT as an SBE subcontractor on defendant AKA's construction contract bids to the County. The defendants used the United States mail to accomplish its fraudulent scheme.

The County relied on the defendants' representation that defendant LT was a certified SBE and awarded a construction contract to defendant AKA. Defendant LT's SBE certification gave the defendants the benefits of the County's SBE Program, including the 10% bidding advantage. As a result of this 10% SBE advantage, the County awarded defendant AKA a construction contract. If the defendants had not represented that defendant LT was a certified SBE, the County would have awarded this contract to the prime contractor for whom plaintiff Corcel submitted its subcontract bid. Thus, the defendants' scheme caused plaintiff Corcel to lose the related subcontract.

6

## II.  PROCEDURAL BACKGROUND

Plaintiff Corcel brought a six-count complaint against the defendants, alleging (1) federal RICO violations pursuant to 18 U.S.C. § 1962(c) (Counts 1 and 4); (2) federal RICO conspiracy violations pursuant to 18 U.S.C. § 1962(d) (Counts 2 and 5); and (3) Florida RICO violations pursuant to Florida Statutes §§ 772.103–104 (Counts 3 and 6).

The defendants each filed Rule 12(b)(6) motions to dismiss plaintiff Corcel's complaint for failure to state a claim.  Defendant Ferguson argued that (1) plaintiff Corcel was not directly injured and its injury was not proximately caused by defendant Ferguson's alleged fraudulent conduct; (2) plaintiff Corcel's claims are time barred; and (3) plaintiff Corcel did not plead the fraud claims with particularity.  Defendant LT argued that (1) collateral estoppel prevents plaintiff Corcel from arguing that defendant LT was ineligible for SBE certification and (2) the letters and affidavits submitted by defendant LT were not false.  Defendant AKA argued that (1) there is no RICO proximate causation because plaintiff Corcel alleged harm to a third party; (2) there was no pattern of racketeering activity because LT did not commit any crime; and (3) there was no RICO continuity.  Each defendant joined in the arguments raised by its co-defendants.

7

The district court granted the defendants' motions to dismiss.  The district court concluded that the alleged fraud in the SBE program, even if true, directly injured the County and not plaintiff Corcel.  The district court also determined that any attempt by plaintiff Corcel to amend its complaint would be futile.  The district court did not discuss the defendants' alternative arguments for dismissal.  And, the district court declined to exercise supplemental jurisdiction over plaintiff Corcel's remaining state law claims.

Plaintiff Corcel timely appealed.

### III.  STANDARD OF REVIEW

This Court reviews the denial of a Rule 12(b)(6) motion de novo.  Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 n.2 (11th Cir. 2006).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  The plausibility standard is met where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

8

## IV.  DISCUSSION

### A.    Federal Civil RICO Violations

It is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."  18 U.S.C. § 1962(c). Section 1964(c) permits a civil action if a person is injured due to another person's violation of § 1962.  18 U.S.C. § 1964(c).

To establish a federal civil RICO violation under § 1964(c), a plaintiff must prove (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) injury to "business or property" (6) that was "by reason of" the substantive RICO violation.[2]  Mohawk Indus., 465 F.3d at 1282–83 (citing 18 U.S.C. §§ 1962(c), 1964(c)).

The "by reason of" requirement implicates two concepts:  (1) a sufficiently direct injury so that a plaintiff has standing to sue and (2) proximate cause.  Id. at 1287.  Thus, to state a claim, civil RICO plaintiffs must prove proximate causation. See id. (citing Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S. Ct. 1991

---

[2]The first four requirements apply to both civil and criminal RICO claims.  Mohawk Indus., 465 F.3d at 1282.

9

(2006)); see also Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 9, 130 S. Ct. 983, 989 (2010).  Courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations.  Mohawk Indus., 465 F.3d at 1287.

Here, the district court dismissed plaintiff Corcel's complaint for lack of proximate causation.  We, thus, review what constitutes proximate cause in the federal civil RICO context and then determine whether plaintiff Corcel's complaint alleges facts sufficient to establish proximate causation.

## B.    Proximate Cause in Federal Civil RICO Cases

For federal RICO purposes, courts evaluate proximate cause "in light of its common-law foundations."  Hemi Grp., 559 U.S. at 9, 130 S. Ct. at 989.  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  Anza, 547 U.S. at 461, 126 S. Ct. at 1998.  Thus, proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged."  Id. at 457, 126 S. Ct. at 1996 (quoting Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 1318 (1992)) (quotation marks omitted).   A link that is "too remote," "purely contingent," or "indirect" is insufficient.  Id. at 457, 460, 126 S.

10

Ct. at 1996, 1998 (quoting Holmes, 503 U.S. at 271, 274, 112 S. Ct. at 1319, 1321) (quotation marks omitted).

Although a plaintiff need not show that the injurious conduct was the sole cause of the injury asserted, proximate causation requires that the plaintiff allege "some direct relation" between the injury asserted and the injurious conduct. Mohawk Indus., 465 F.3d at 1287–88 (quoting Anza, 547 U.S. at 457, 126 S. Ct. at 1996). As explained by the Supreme Court, "Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act." Anza, 547 U.S. at 457, 126 S. Ct. at 1996 (quotation marks and citation omitted). In both federal RICO and federal antitrust cases, proximate cause is not the same thing as a sole cause. Mohawk Indus., 465 F.3d at 1288 n.5 (quoting Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1399 (11th Cir.) (RICO), modified on other grounds by 30 F.3d 1347 (11th Cir. 1994)). In both types of cases, "it is enough for the plaintiff to plead and prove that the defendant's tortious or injurious conduct was a substantial factor in the sequence of responsible causation." Id. (internal quotations marks omitted).

In evaluating whether proximate causation exists, "courts should consider the 'motivating principles' behind the directness component of the proximate-cause standard in RICO cases." Id. at 1288 (quoting Anza, 547 U.S. at 458, 126 S.

11

Ct. at 1997) (alterations adopted).  Motivating principles include (1) "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action"; (2) "the speculative nature of the proceedings that would follow if [the plaintiff] were permitted to maintain its claim"; (3) whether the alleged harm "could have resulted from factors other than [the plaintiff's] alleged acts of fraud"; (4) "any appreciable risk of duplicative recoveries"; and (5) whether "the immediate victims of [the] alleged RICO violation can be expected to vindicate the laws by pursuing their own claims."  Anza, 547 U.S. at 458–60, 126 S. Ct. at 1997–98.

"[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of plaintiff's damages attributable to the violation, as distinct from other, independent factors."  Holmes, 503 U.S. at 269, 112 S. Ct. at 1318.  "This remoteness concern is heightened when RICO suits are brought by economic competitors seeking damages for lost sales because those types of claims, 'if left unchecked, could blur the line between RICO and the antitrust laws.'"  Mohawk Indus., 465 F.3d at 1288 (quoting Anza, 547 U.S. at 460, 126 S. Ct. at 1998).

With this background on proximate causation in the federal civil RICO context in mind, we turn to the sufficiency of plaintiff Corcel's complaint.

12

## C.    Allegations in Plaintiff Corcel's Complaint

According to plaintiff Corcel's complaint, defendants Ferguson and LT formed the Ferguson-LT enterprise and undertook a fraudulent scheme wherein defendants Ferguson and LT solicited and prepared false and misleading documents and repeatedly submitted those documents to the County for the express purposes of (1) obtaining defendant LT's SBE certification and (2) winning supply contracts from the County based on the 10% SBE advantage.

Similarly, according to plaintiff Corcel's complaint, defendants AKA, Ferguson, and LT formed the AKA-Ferguson-LT enterprise and executed a fraudulent scheme by listing defendant LT as an SBE subcontractor on defendant AKA's construction contract bids to the County even though the defendants knew that defendant LT was certified as a SBE only because of defendants LT and Ferguson's prior fraudulent actions.  According to plaintiff Corcel, the three defendants used defendant LT's ill-gotten SBE status for the express purpose of winning a construction contract award from the County based on the 10% SBE advantage.

Critically, plaintiff Corcel alleges that—if the County had not relied on the defendants' false and fraudulent documents and actions—the County would have

13

awarded plaintiff Corcel the supply and construction contract at issue because plaintiff Corcel was the next lowest SBE bidder.

Given these allegations—which we must accept as true at this Rule 12(b)(6) stage of the litigation—we conclude that plaintiff Corcel has alleged a direct relation between its claimed injury and defendants' federal civil RICO violations sufficient to constitute proximate causation at this pleading stage in the proceedings. See Mohawk Indus., 465 F.3d at 1287–88 (requiring "some direct relation" between the injury asserted and the injurious conduct). According to the complaint, the defendants' scheme of knowingly misrepresenting defendant LT's qualifications for SBE status had the purpose and direct result of channeling contracts to the defendants and away from the entity that would have received those contracts (i.e., plaintiff Corcel) if the defendants had not undertaken their fraudulent conduct. Simply put, the defendants' alleged fraud directly caused plaintiff Corcel to lose multiple County contracts.

Examination of the motivating principles behind the directness component of the proximate causation requirement in federal RICO cases bolsters this Court's conclusion that, as alleged, there is a direct relationship between the defendants' actions and plaintiff Corcel's harm. See Anza, 547 U.S. at 458–60, 126 S. Ct. at 1997–98.

14

First, as alleged, plaintiff Corcel was next in line to receive the County contracts at issue. That is, if the defendants' alleged SBE fraud had not occurred, plaintiff Corcel would have been awarded the supply and construction contracts. Based on the allegations, there are no other factors that would have prevented plaintiff Corcel from receiving those contracts. But see id. at 459, 126 S. Ct. at 1997 (reaching different result based, in part, on the court's determination that the plaintiff's "lost sales could have resulted from factors other than [the defendants'] alleged acts of fraud").

Second, plaintiff Corcel's damages should be ascertainable. For each contract that plaintiff Corcel would have won but-for the defendants' actions, plaintiff Corcel may demonstrate with direct evidence the alleged profit that it would have made in executing the contract. At this pleading stage and given the allegations in plaintiff Corcel's complaint, we cannot say that such damages would be wholly speculative in nature. See id. at 458–59, 126 S. Ct. at 1997–98 (considering the relative ease of ascertaining damages and the "speculative nature" of the proceedings required to maintain a federal civil RICO claim).

Third, there is no appreciable risk of duplicative recoveries. See id. at 459, 126 S. Ct. at 1998 (considering "any appreciable risk of duplicative recoveries"). As alleged, plaintiff Corcel was next in line to receive each of the County contracts

15

at issue.  Consequently, no other bidder would be able to recover based on the defendants' alleged federal RICO violations.  And, the County's possible recovery is not duplicative of plaintiff Corcel's recovery.  As alleged, the County saved money by awarding the contracts to the defendants instead of plaintiff Corcel. Plaintiff Corcel was the next lowest bidder; as such, its bids were necessarily more than the defendants' bids.  If the County had awarded the contracts to plaintiff Corcel, the County would have paid more money than it actually paid to the defendants.  Consequently, there is no appreciable risk of duplicative recovery here.[3]

Fourth, no other immediate victims of the defendants' alleged RICO violations are more likely to vindicate the laws by pursuing their own claims.[4]  See id. at 460, 126 S. Ct. at 1998 ("The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims.").  As a

---

[3]We acknowledge that the prime contractor (and any possible subcontractors) who was deprived business as a result of the AKA-Ferguson-LT enterprise may seek recourse similar to that sought by plaintiff Corcel.  However, in such case, any potential recovery would not be duplicative; it would simply make all of the entities wronged by the defendants' alleged actions whole.

[4]The Court notes that the prime contractor (and any possible subcontractors) on the construction contract that is the subject of the AKA-Ferguson-LT enterprise may be motivated to bring similar claims.  However, based on the complaint, we cannot say that those entities are more likely to vindicate the federal RICO laws through their own, separate civil actions.

16

preliminary matter, plaintiff Corcel was an immediate victim of the defendants'

fraud, as plaintiff Corcel was directly harmed by the defendants' conduct.  The

County is also a victim—at least insofar as the defendants' fraud undermined the

purposes of the County's SBE Program by denying the County the opportunity to

award contracts to businesses that actually met its SBE requirements.  Because

plaintiff Corcel's lost opportunity for profits is more direct and quantifiable than

the subversion of the County's SBE Program, plaintiff Corcel is the victim most

likely to attempt to vindicate the federal civil RICO laws.[5]

For all of these reasons, we conclude that plaintiff Corcel's complaint

alleges a sufficiently direct injury, especially given the factual allegations that

directly correlate the defendants' alleged fraud and plaintiff Corcel's lost

opportunity to obtain the County's business.  Thus, plaintiff Corcel's allegations

contain sufficient factual matter, accepted as true, to state federal civil RICO

---

[5]The district court relied on a fact not present in plaintiff Corcel's complaint:  that the County paid more as a result of the defendants' fraud and was incentivized to sue.  As noted above, however, plaintiff Corcel alleged that the County paid less to the defendants than it would have paid to plaintiff Corcel as the next lowest bidder.  That is, the defendants' alleged fraud saved the County money.  Once the County's relative financial harm is clarified, the district court's conclusions—that (1) plaintiff Corcel's suit presents a risk of duplicative recoveries and (2) the County is better positioned to sue as the "more immediate victim" of the alleged fraud— are faulty.  While evidence may not bear out this claim, at this pleading stage, we accept the allegations as true.

17

claims that are plausible on their face.  See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

## V.  CONCLUSION

The district court improperly granted the defendants' motions to dismiss plaintiff Corcel's federal civil RICO claims.  Because the district court did not address the defendants' alternative bases for dismissal or plaintiff Corcel's state law claims, we decline to reach those issues in the first instance on appeal.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS**.