18-1102-cv
7 West 57th Street Realty Company v. Citigroup, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 30th day of April, two thousand nineteen.

Present:     ROSEMARY S. POOLER,
             DENNY CHIN,
                     *Circuit Judges*.
             ERIC N. VITALIANO,[1]
                     *District Judge*.

---

7 WEST 57TH STREET REALTY COMPANY, LLC,
A Delaware Limited Liability Company,

                    *Plaintiff-Appellant*,

             v.                                              18-1102-cv

CITIGROUP, INC., CITIBANK, N.A., BANK OF AMERICA CORPORATION, BANK OF AMERICA N.A., BARCLAYS BANKS PLC, UBS AG, JPMORGAN CHASE & CO., CREDIT SUISSE GROUP AG, BANK OF TOKYO-MITSUBISHI UFJ, LTD., COOPERATIEVE CENTRALE RAIFFEISEN - BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, HBOS PLC, LLOYDS BANKING GROUP PLC, ROYAL BANK OF CANADA, THE NORINCHUKIN BANK, THE ROYAL BANK OF

---

[1] Judge Eric N. Vitaliano, United States District Court for the Eastern District of New York, sitting by designation.

SCOTLAND GROUP PLC, WESTLB AG, WESTDEUTSCHE
IMMOBILIENBANK AG, DEUTSCHE BANK AG,
JPMORGAN CHASE BANK, N.A.,

*Defendants-Appellees.*

_____

Appearing for Appellant:    Sarah E. Harrington, Goldstein & Russell, P.C. (Eric F. Citron, *on the brief*), Bethesda, MD

Daniel J. Mogin, Jodie Williams, MoginRubin LLP, San Diego, CA (*on the brief*)

Appearing for Appellees:    Beth S. Brinkmann, Covington & Burling LLP (Andrew A. Ruffino, *on the brief*), Washington DC, *for Defendants-Appellees Citigroup Inc. and Citibank, N.A.*

Arthur J. Burke, Davis Polk & Wardwell LLP (Paul S. Mishkin, Adam G. Mehes, *on the brief*), New York, N.Y., *for Defendants-Appellees Bank of America Corporation and Bank of America, N.A.*

Sean R. O'Brien, O'Brien LLP, New York, N.Y., *for Defendant-Appellee Barclays Bank PLC*

Mark A. Kirsch, Gibson, Dunn & Crutcher LLP (Jefferson E. Bell, Eric Jonathan Stock, *on the brief*), New York, N.Y., *for Defendant-Appellee UBS AG*

Joel Kurtzberg, Cahill Gordon & Reindel LLP (Jason M. Hall, Elai Katz, Adam Mintz, Herbert Scott Washer, *on the brief*), New York, N.Y., *for Defendant-Appellee Credit Suisse Group AG*

Abram Ellis, Simpson Thacher & Bartlett LLP (Mary Beth Forshaw, Paul C. Gluckow, Alan C. Turner, *on the brief*), Washington, D.C., *for Defendants-Appellees JPMorgan Chase & Co. and JP Morgan Chase Bank, N.A.*

Daryl A. Libow, Sullivan & Cromwell LLP (Elizabeth Cassady, Christopher Michael Viapiano, *on the brief*), Washington, D.C., *for Defendant-Appellee The Bank of Tokyo-Mitsubishi UFJ, Ltd. (n/k/a MUFG Bank, Ltd.)*

David R. Gelfand, Milbank, Tweed, Hadley & McCloy LLP (Robert C. Hora, Mark D. Villaverde, Jonathan Ohring, *on the brief*), New York, N.Y., *for Defendant-Appellee Coöperatieve*

*Centrale Raiffeisen-Boerenleenbank B.A. (n/k/a Coöperatieve Rabobank U.A.)*

Gregory T. Casamento, Locke Lord LLP (J. Matthew Goodin, Julia C. Webb, Roger B. Cowie, *on the brief*), New York, N.Y., *for Defendants-Appellees HSBC Holdings PLC and HSBC Bank PLC*

Marc J. Gottridge, Hogan Lovells US LLP (Lisa J. Fried, Benjamin A. Fleming, *on the brief*), New York, N.Y., *for Defendants-Appellees HBOS plc and Lloyds Banking Group plc*

Andrew W. Stern, Sidley Austin LLP (Thomas Andrew Paskowitz, Alan M. Unger, *on the brief*), New York, N.Y., *for Defendant-Appellee The Norinchukin Bank*

Christian T. Kemnitz, Katten Muchin Rosenman LLP (Robert Thomas Smith, *on the brief*), Chicago, IL, *for Defendant-Appellee Royal Bank of Canada*

David S. Lesser, Wilmer Cutler Pickering Hale And Dorr LLP, New York, N.Y., *for Defendant-Appellee The Royal Bank of Scotland Group PLC*

Christopher M. Paparella, Hughes Hubbard & Reed LLP, New York, N.Y., *for Defendants-Appellees WestLB AG (n/k/a Portigon AG) and WestDeutsche ImmobilienBank AG (n/k/a Westdeutsche Immobilien Servicing AG)*

Aidan Synnott, Paul, Weiss, Rifkind, Wharton & Garrison LLP (Moses Silverman, *on the brief*), New York, N.Y., *for Defendant-Appellee Deutsche Bank AG*

Appeal from the United States District Court for the Southern District of New York (Gardephe, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Appellant 7 West 57th Street Realty Company, LLC appeals from the March 20, 2018, judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*), dismissing its claims under the Sherman Act, 15 U.S.C. § 1 et seq., the Clayton Act, 15 U.S.C. § 15, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and New York's Donnelly Act, N.Y. Gen. Bus. Law §§ 340-347, against Citigroup, Inc., Citibank, N.A., Bank of America Corporation, Bank of America N.A., Barclays Banks PLC, UBS AG, JPMorgan Chase & Co., Credit Suisse Group AG, Bank of Tokyo-Mitsubishi UFJ, Ltd., Cooperatieve Centrale Raiffeisen - Boerenleenbank B.A., HSBC Holdings

PLC, HSBC Bank PLC, HBOS plc, Lloyds Banking Group plc, Royal Bank of Canada, The Norinchukin Bank, The Royal Bank of Scotland Group PLC, WestLB AG, WestDeutsche ImmobilienBank AG, Deutsche Bank AG, JPMorgan Chase Bank, N.A. (collectively, "Defendants"), arising from Defendants' alleged manipulation of the London Inter-bank Offered Rate ("LIBOR"). On March 31, 2015, the district court dismissed Appellant's federal claims and declined to exercise supplemental jurisdiction over its state law claims. *See generally 7 W. 57th St. Realty Co. v. Citigroup, Inc. (Citigroup I)*, No. 13 Civ. 981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015). On March 20, 2018, the district court denied Appellant's motion for leave to amend its complaint, holding that, because Appellant's proposed second amended complaint was still deficient, amendment would be futile. *See generally 7 W. 57th St. Realty Co. v. Citigroup, Inc. (Citigroup II)*, 314 F. Supp. 3d 497 (S.D.N.Y. 2018). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

## I. Legal Standards

We review de novo a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). "The denial of leave to amend is similarly reviewed *de novo* because the denial was based on an interpretation of law, such as futility." *Gelboim v. Bank of America Corp.*, 823 F.3d 759, 769 (2d Cir. 2016) (internal quotation marks omitted).

We accept "as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." *Biro*, 807 F.3d at 544. To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain "enough factual matter (taken as true)" that is suggestive of, "not merely consistent with," the alleged wrongdoing. *Id.* at 556-57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where, as here, a RICO claim rests on alleged violations of the mail fraud, wire fraud, and bank fraud statutes, a complaint must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).

## II. Antitrust Claims

Appellant argues that the district court erred by concluding that it lacked antitrust standing. To establish antitrust standing, a plaintiff must have suffered an antitrust injury and be an efficient enforcer of the antitrust laws. *See Gelboim*, 823 F.3d at 772. The efficient enforcer inquiry turns on weighing four factors: "(1) the directness or indirectness of the asserted injury, which requires evaluation of the chain of causation linking [Appellant's] asserted injury and the Banks' alleged price-fixing; (2) the existence of more direct victims of the alleged conspiracy; (3) the extent to which [Appellant's] damages claim is highly speculative; and (4) the importance of avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other." *Id.* at 778 (internal quotation marks omitted); *see also id.* at 772. "[T]he weight to be given the various factors will necessarily vary with the

4

circumstances of particular cases." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 443 (2d Cir. 2005).

### A. Directness of Appellant's Injuries

"Directness in the antitrust context means close in the chain of causation." *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 78 (2d Cir. 2013) (internal quotation marks omitted). That is because "[a]n antitrust violation may be expected to cause ripples of harm to flow through the Nation's economy; but despite the broad wording of § 4 [of the Clayton Act] there is a point beyond which the wrongdoer should not be held liable." *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 534 (1983) (internal quotation marks omitted); *see also Blue Shield of Va. v. McCready*, 457 U.S. 465, 477 (1982) ("It is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property."). Our directness inquiry employs "familiar principles of proximate causation." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 412 (2d Cir. 2014).

Here, Appellant's complaint alleges that LIBOR affects the value of bonds, like those that belonged to Sheldon Solow—Appellant's predecessor in interest—that are not pegged to LIBOR. However, because Solow's municipal bonds were not actually LIBOR denominated, any diminution in value was necessarily directly caused by the independent judgments of participants in the secondary municipal bond market. Moreover, we recognized in *Gelboim* the danger of opening up antitrust liability to LIBOR contributor panel banks for injuries "to every plaintiff who ended up on the wrong side of an independent LIBOR-denominated derivative swap:" doing so would "not only bankrupt 16 of the world's most important financial institutions, but also vastly extend the potential scope of antitrust liability in myriad markets where derivative instruments have proliferated." 823 F.3d at 779. That concern is exponentially more present in this case, where the bonds were not actually tied to LIBOR.

### B. More Direct Victims

"[N]ot every victim of an antitrust violation needs to be compensated under the antitrust laws in order for the antitrust laws to be efficiently enforced." *Id*. "The existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party. . . to perform the office of a private attorney general." *Associated Gen. Contractors*, 459 U.S. at 542.

Here, there are indisputably more direct victims. As Appellant alleges in its complaint, "[h]undreds of trillions of dollars of bank loans are subject to LIBOR." App'x at 41 ¶ 7. A person or entity that was on one side or the other of those transactions would have a more direct injury flowing from Defendants' alleged LIBOR manipulation than someone, like Appellant, whose injury flowed from the ripple effect LIBOR has on financial instruments that are not actually tied to LIBOR.

## C. Speculative Damages

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946); *see also Gelboim*, 823 F.3d at 779. Indeed, "[i]mpediments to reaching a reliable damages estimate often flow from the nature and complexity of the alleged antitrust violation." *Gelboim*, 823 F.3d at 780. "Still, highly speculative damages is a sign that a given plaintiff is an inefficient engine of enforcement." *Id.* at 779.

Here, the damages flowing from Appellant's alleged injuries would be highly speculative. In *Gelboim*, we recognized that "[a]ny damages estimate would require evidence to support a just and reasonable estimate of damages," and estimating the damages for LIBOR-pegged instruments would present "some unusual challenges," in part because the "market for money is worldwide" and there are several ways to set interest rates. *Id.* at 779-80 (internal quotation marks omitted). We therefore found it "difficult to see how appellants would arrive at such an estimate, even with the aid of expert testimony." *Id.* at 779. This case presents an even more unusual challenge because Solow's bonds were not LIBOR-denominated. To quantify Appellant's injury, a jury would need to know what LIBOR hypothetically would have been had Defendants not manipulated it, and how this would have affected the value of Solow's bonds. Much of this calculation would require speculation about how each of the 16 LIBOR panel banks would have answered the LIBOR question over the five days when Solow's bond portfolio declined in value. Moreover, without knowing what buyers would pay or sellers would accept for bonds during that period, a jury would have to speculate how the hypothetical LIBOR would have affected the "illiquid and opaque" market in which Solow's bonds traded. *See* App'x at 551 ¶ 160.

## D. Duplicative Recovery and Complex Damage Apportionment

Defendants do not offer any serious argument why allowing Appellant to assert antitrust standing would require any sort of complex apportionment of damages or would run the risk of duplicative recovery—aside from pointing to the existence of "government and regulatory investigations and suits," with no further explanation how possible recoveries by the entities, agencies, and plaintiffs in those matters would be duplicative of Appellant's possible recovery in the present matter. Appellees' Br. at 42 (quoting *Gelboim*, 823 F.3d at 780). Indeed, as was the case in *Gelboim*, "[i]t is wholly unclear on this record how issues of duplicate recovery and damage apportionment can be assessed." 823 F.3d at 780.

In sum, balancing the above considerations, we agree with the district court that Appellant is not an efficient enforcer of the antitrust laws.

## III. RICO Claim

Below, the district court held that Appellant's RICO claim was barred by res judicata. *Citigroup II*, 314 F. Supp. 3d at 518-19. It reasoned that, because public revelations about potential "LIBOR manipulation occurred on March 15, 2011"—before the state court issued the

March 24, 2011, judgment against Solow in Citibank's favor—Solow could have brought the RICO claim in the prior state court proceeding. *Id.* We decline to address that issue because, even if res judicata did not bar Appellant's RICO claim, it would fail on the merits.

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (internal quotation marks omitted). "Proximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirec[t] is insufficient." *Id.* (second alteration in original) (citation and internal quotation marks omitted).

Here, the alleged RICO-predicate fraud only indirectly caused Solow's bond portfolio to decline in value, to the extent there was any causation at all. As explained above, the injury was directly caused by buy/sell decisions that independent market actors made, which LIBOR may have influenced. Although the existence of independent buyers and sellers in a capital market does not act as a per se bar to a finding of proximate causation, it does act as a bar here, because the opacity and illiquidity of the market for Solow's bonds would prevent a court from using the economic tools ordinarily used for inferring reliance and causation—for example, the fraud on the market theory, event studies, or the efficient capital markets hypothesis—in evaluating Appellant's claim. Because Defendants' alleged RICO-predicate fraud did not proximately cause Solow's injury, the district court was correct to dismiss Appellant's RICO claim.

We have considered the remainder of Appellant's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7