**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0380n.06

Case No. 19-1829

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 26, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MONICA COLLIER, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MAURIZIO LOGIUDICE, et al., | ) | MICHIGAN |
| | ) | |
|     Defendants-Appellees. | ) | |

BEFORE:  SILER, GIBBONS, and THAPAR, Circuit Judges.

**SILER**, Circuit Judge.  Monica Collier appeals the district court's judgment on the pleadings in favor of Maurizio LoGiudice, Giovanna LoGiudice, and Mandy Tithof (collectively "Appellees"). Collier also appeals the district court's resolution of her motion to compel the continuation of Maurizio LoGiudice's deposition and motion for sanctions. We AFFIRM.

I.

Collier worked at Vitale's Pizzeria of Hudsonville, LLC ("Vitale's") from 2011 until 2017. Collier logged all hours that she worked in Vitale's Point of Service System. However, Vitale's general manager only reported to the payroll company the first forty hours employees worked each week. Collier was paid for these hours through direct deposit or check. Vitale's general manager

tracked by hand any hours worked greater than forty per week and paid Collier in cash for these hours at her regular hourly rate.

In 2018, Collier filed two lawsuits in the Western District of Michigan based on this conduct. First, she filed a collective action complaint against Vitale's, its owner Maurizio LoGiudice, and general manager Tithof alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for failure to pay Collier overtime at the rate of time-and-one-half. *See Collier v. Vitale's Pizzeria of Hudsonville, LLC*, No. 1:18-cv-804 (W.D. MI). Second, Collier filed the instant suit, a class action against Appellees, alleging that these individuals conspired and committed civil Racketeer Influenced and Corrupt Organizations Act ("RICO") violations.

Collier alleges that Appellees violated RICO by committing mail and wire fraud to advance three conspiracies to defraud taxing authorities, employees, and Vitale's workers' compensation insurance carrier: (1) the "Tax Evasion Scheme," (2) the "Wage Theft Scheme," and (3) the "Workers' Compensation Insurance Scheme."

First, with respect to the Tax Evasion Scheme, Collier argues that Appellees did not pay the required withholdings on the cash payments "with the goal of defrauding the state and federal tax authorities." Collier claims she "suffered injury to [her] property, including the loss of money and exposure to additional tax liability along with fines and interest" because of Appellees' alleged mail and wire fraud against the governmental taxing authorities. She further alleges that the "nonpayment of withholdings also lessened [her] future social security benefits."

Second, she alleges that Appellees engaged in a Wage Theft Scheme by "defraud[ing] Plaintiff and class members of their overtime premium pay for all hours worked over forty (40)." Third, she alleges Appellees engaged in a Workers' Compensation Insurance Scheme through

"defrauding their workers' compensation insurance carrier by submitting fraudulent wage amounts to their carrier which was then relied upon and used to calculate their insurance premiums." Essentially, she argues that Appellees underreported their payroll expenses to their workers' compensation insurance carrier, which resulted in lower premiums.

Disputes between counsel arose during discovery, especially during the deposition of Maurizio LoGiudice. Before the deposition was concluded the district court granted Appellees' motion to dismiss under Federal Rule of Civil Procedure 12(c) and dismissed Collier's complaint because she failed to sufficiently allege proximate cause. Collier appealed.

II.

First, Collier argues that the district court erred when it dismissed her RICO claims under Federal Rule of Civil Procedure (FRCP) 12(c). Second, Collier challenges the district court's resolution of her motion to compel and motion for sanctions. We address each challenge below.

III.

Collier argues that the district court erred when it dismissed her RICO claims under FRCP 12(c).

We review *de novo* a judgment on the pleadings under FRCP 12(c) and evaluate whether the complaint states a plausible claim for relief. *See Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). "To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). The factual allegations in the complaint must be accepted as true but "[w]e need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Id.*

A.

First, Collier argues that her RICO claims are not precluded by the FLSA. This court recently held in a similar case that "the FLSA's detailed remedial scheme precludes certain claims brought under the RICO statute." *See Torres v. Vitale*, 954 F.3d 866, 875 (6th Cir. 2020). In *Torres*, the plaintiff brought two lawsuits, an FLSA suit and a RICO suit against another Vitale's restaurant. *Id.* at 870. Both lawsuits were based on conduct similar to that alleged in this case. The FLSA suit was based on Vitale's alleged failure to pay its workers overtime for hours worked in excess of forty per week. *Id.* The RICO suit, based on the same factual scenario as the FLSA suit, set forth essentially the same three schemes alleged in this case: (1) a "tax evasion scheme," (2) a "wage-theft scheme," and a (3) "workers'-compensation-insurance-scheme." *Id.*

In *Torres* the district court dismissed the plaintiff's RICO suit as precluded by the FLSA. *Id.* at 869. Plaintiff appealed and this court issued an opinion holding:

> the FLSA preclude[s] RICO claims to the extent that the damages sought are for unpaid minimum or overtime wages. However, when a RICO claim that is based on a dispute between an employer and an employee alleges damages that are distinct from unpaid wages, even if the RICO predicate-act arises from conduct that also violates the FLSA, then the RICO remedies do not fall within the ambit of the FLSA's remedial scheme and are therefore not precluded.

*Id.* at 875.

Applying this holding, the court affirmed dismissal of the RICO claim as it related to the "wage theft scheme" (i.e., the underpayment of overtime wages), "because it [sought] the exact same remedy that is provided by the FLSA." *Id.* at 876. The court also determined that the district court properly dismissed the plaintiff's RICO claim regarding the workers' compensation insurance scheme because although Vitale's insurance company may have been injured, the plaintiff did not identify any way in which he was injured by this scheme. *Id.* The court concluded that as to the tax evasion scheme, it could not say whether it was precluded under the FLSA. The

court explained that "[w]ithout the benefit of briefing or argument on this issue," it "decline[d] to decide in the first instance whether [the plaintiff] pleaded cognizable damages separate from lost wages so as to state a viable RICO claim." *Id.* at 877. Therefore, it remanded the case to the district court to determine whether the plaintiff "adequately pleaded a RICO claim with damages that are distinct from his wage and hour claims." *Id.*

Here, the district court did not address this preclusion argument and dismissed Collier's RICO claims on different grounds. Nevertheless, we are bound by the decision in *Torres* and "we 'may affirm on any grounds supported by the record even if different from the reasons of the district court.'" *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002)); *see Miller v. Kent Nutrition Grp., Inc.*, 783 F. App'x 604, 606–07 (6th Cir. 2019). Therefore, like the Court in *Torres* we affirm the dismissal of Collier's RICO claim as it relates to the wage theft scheme because it seeks the same remedy provided by the FLSA, the recovery of unpaid overtime.

However, unlike the district court in *Torres*, here, the district court analyzed whether Collier sufficiently pled a RICO claim and held that Collier did not adequately allege proximate cause. Therefore, we next evaluate whether the district court properly dismissed Collier's RICO claims regarding the remaining two schemes (tax evasion and workers' compensation insurance) based on lack of proximate cause.

B.

Collier brought this lawsuit under RICO, which was designed to combat organized crime. "As part of RICO's extensive civil enforcement scheme, Congress included 18 U.S.C. § 1964(c) which allows for private suits for treble damages and attorneys' fees to '[a]ny person injured in his

business or property *by reason of a violation of section 1962*[.]" *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 154 (6th Cir. 1990) (quoting 18 U.S.C. § 1964(c)).

To state a cause of action under RICO, a plaintiff must allege that the defendants have engaged in a "pattern of racketeering activity" through the repeated commission of predicate acts. *See* 18 U.S.C. § 1962. A plaintiff must also allege that the predicate acts, here mail and wire fraud,[1] were a proximate cause of the plaintiff's injuries. *See Wallace v. Midwest Fin. & Mortg. Servs. Inc.*, 714 F.3d 414, 418–19 (6th Cir. 2013) ("It is well-settled that proximate cause is an essential ingredient of any civil RICO claim."). "[T]he central question" for purposes of proximate causation under RICO "is whether the alleged violation led *directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added); *see also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9–10 (2010) (plurality opinion) (explaining that RICO requires a "direct relationship" between the fraud and the injury). The concept is flexible but "the causal link between the injury and the conduct may [] be too weak to constitute proximate cause [if] it is insubstantial, unforeseeable, speculative, or illogical, or because of intervening causes." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 614 (6th Cir. 2004).

For example, in *Hemi Group* a plurality of the Supreme Court found that a company's failure to file certain tax information did not directly harm the City of New York. The City filed a RICO lawsuit against a company for failing to file required customer information with state tax authorities, which they argued constituted mail and wire fraud. *See Hemi Grp.*, 559 U.S. at 4. The court held that "[b]ecause the City cannot show that it lost the tax revenue 'by reason of' the alleged RICO violation . . . the City cannot state a claim under RICO." *Id.* at 4–5. The court

---

[1] Mail and wire fraud qualify as predicate acts under 18 U.S.C. § 1961. *See* 18 U.S.C. 1961(1) (listing 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud) as racketeering activity).

reasoned that there were intervening steps before the City suffered any injury—for instance, the company's customer had to fail to pay the taxes they owed the City. *Id.* at 10–11. Therefore, the alleged violation did not lead directly to the City's injuries.

Here, Collier did not sufficiently plead proximate cause as it relates to either the Workers' Compensation Insurance Scheme or the Tax Evasion Scheme. As to the first scheme, Collier alleges that Appellees underreported their payroll expenses to their workers' compensation insurance carrier, which in theory resulted in lower insurance premiums for Appellees. Although this may have injured Vitale's insurance company, Collier does not allege any facts that indicate how she was injured by this scheme. Therefore, the district court properly dismissed Collier's RICO claim to the extent that it relies on the alleged Workers' Compensation Insurance Scheme.

As to the Tax Evasion Scheme, Collier alleges that Appellees only reported to tax authorities the compensation paid to employees for the first forty hours worked in a week and did not report the cash payments made to employees for hours worked in excess of forty hours. As such, Collier claims that Appellees did not pay the required amount of withholdings to tax authorities, which she argues injured her by lowering her future social security benefits and exposing her to tax liabilities and penalties.

However, we conclude that the defendants' misconduct (mailing false W-2s) did not lead *directly* to Collier's injuries. As in *Hemi Group*, "the conduct directly responsible for [Collier's] harm was [her own] failure to pay [her] taxes," not the defendants' failure to report her cash wages. *Hemi Grp.*, 559 U.S. at 11. Although most employees inherently rely upon the figures reported on their W-2s as accurate, when Collier filed her taxes she knew she received off-the-books cash payments for certain hours and knew her pay statements and W-2 statements did not include these

off-the-books cash payments and she chose not to pay taxes on them.[2] Therefore, the alleged violation of mailing false W-2s did not lead *directly* to Collier's injuries. In sum, we affirm the district court's conclusion that Collier failed to sufficiently establish proximate cause.

IV.

Collier also appeals the district court's resolution of her motion to compel the deposition of Maurizio LoGiudice and motion for sanctions.

We must review the district court's decision for abuse of discretion. *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 209 (6th Cir. 1995). District courts have broad discretion over the discovery process. *Pittman v Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). Substantial deference is given to the district court's decision to limit discovery and we will not reverse it unless there is "a clear showing that the denial of discovery resulted in actual and substantial prejudice to the complaining litigant." *Id.*

During Maurizio LoGiudice's deposition Appellees' counsel objected over 300 times and left the deposition before Collier was finished asking questions. Collier then filed a motion to compel the deposition to continue and moved for sanctions against Appellees' counsel. Appellees' counsel argued that he objected so many times because Collier's line of questioning was not relevant. The district court ordered an additional six hours of deposition to occur two months after its order so that the court had time to rule on the pending motion to dismiss before the deposition. The court also ordered the deposition to occur in the courtroom so that it could readily resolve any

---

[2] Although Collier's brief argues that she did not know the pay statements and W-2s were false, she does not cite to any part of the pleadings in support and the Complaint contradicts this claim. The Complaint indicates that Collier knew the cash payments she received were off-the-books and that her pay statements and W-2s did not include the cash payments. *See e.g.*, Complaint, RE 1 at 5, ¶ 40 (alleging that "[o]n approximately September 2015, [Collier] informed Defendant Maurizio that the policy of paying in cash and not reporting her whole income was impacting her negatively.").

disputes that may arise. The district court did not limit the scope or subject matter of the deposition and provided a well-reasoned basis for the timing and location restrictions. Therefore, we conclude that the district court did not abuse its broad discretion in the resolution of Collier's motion to compel.

Collier also argues that the district court erred by not issuing sanctions against Maurizio and his counsel for their conduct during the deposition. Specifically, Collier argues that Maurizio's counsel's objections and instructions to Maurizio not to answer based on relevance and leaving the deposition before Collier was finished asking questions is "sanctionable on its face." Collier is correct that "[u]nder the plain language of Fed. R. Civ. P. 30(d)(1), counsel may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to suspend a deposition in order to present a motion under Fed. R. Civ. P. 30(d)(3)." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Further, "[i]t is inappropriate to instruct a witness not to answer a question on the basis of relevance." *Id.*

But a district court's decision to decline to impose sanctions is reviewed for abuse of discretion. A district court has wide discretion when determining whether to issue sanctions and Collier does not indicate that the district court's decision was based on any erroneous conclusions of law or facts, nor is there any reason to believe that the district court's decision was clearly unreasonable, arbitrary, or fanciful. Therefore, we affirm the district court's denial of the motion for sanctions.

V.

Therefore, we AFFIRM the district court's judgment on the pleadings in favor of Appellees. We also AFFIRM the district court's resolution of Collier's motion to compel the continuation of Maurizio LoGiudice's deposition and motion for sanctions.