# United States Court of Appeals
## For the First Circuit

No. 20-1512

STERLING SUFFOLK RACECOURSE, LLC,

Plaintiff, Appellant,

v.

WYNN RESORTS, LTD.; WYNN MA, LLC; STEPHEN WYNN; KIMMARIE
SINATRA; MATTHEW MADDOX; FBT EVERETT REALTY, LLC,

Defendants, Appellees,

PAUL LOHNES,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, District Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Steven Storch, with whom Edward Dolido, Storch Byrne LLP,
David A. Russcol, Inga S. Bernstein, and Zalkind Duncan & Bernstein
LLP were on brief, for appellant.
Peter A. Biagetti, with whom Samuel M. Starr, Mintz, Levin,
Cohn, Ferris, Glovsky, and Popeo, P.C., Mark Holscher, and Kirkland
& Ellis LPP were on brief, for appellees Wynn Resorts Ltd.,
Wynn MA, LLC, and Matthew Maddox.
Aaron M. Katz, with whom Joshua S. Levy, Ropes & Gray LLP,
Christopher Weld, Christian Kiely, and Todd & Weld LLP were on
brief, for appellee FBT Everett Realty, LLC.

James N. Kramer, with whom Douglas H. Meal, Christine E. Hanley, and Orrick, Herrington & Sutcliffe LLP were on brief, for appellee Kimmarie Sinatra.

Joshua C. Sharp, with whom Brian T. Kelly and Nixon Peabody LLP were on brief, for appellee Stephen Wynn.

March 3, 2021

**LYNCH**, **Circuit Judge**.  In 2014, the Massachusetts Gaming Commission (the "Commission") granted a gaming license pursuant to state law to Wynn MA, LLC, a wholly owned subsidiary of Wynn Resorts, Ltd. (collectively "Wynn").  That license said Wynn would construct a casino in Everett, Massachusetts.  Mohegan Sun Massachusetts ("Mohegan") was the disappointed alternative applicant.  Mohegan had proposed a casino facility in East Boston.  Sterling Suffolk Racecourse, LLC ("Sterling"), which owned that East Boston site, was also disappointed by the Commission's licensing decision.

On September 17, 2018, Sterling brought this action under the civil portion of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), against: (1) Wynn MA, LLC, (2) Wynn Resorts, Ltd., (3) Stephen Wynn, the founder and former CEO of Wynn Resorts, (4) Kimmarie Sinatra, the former General Counsel and Executive Vice President of Wynn Resorts, (5) Matthew Maddox, the former Wynn Resorts President and CFO and its current CEO, and current President and Treasurer of Wynn, MA, and (6) FBT Everett Realty, LLC, the owner of the Everett site for the Wynn casino.  Sterling alleged these parties conspired to deprive

Mohegan of a gaming license, costing Sterling the opportunity to lease its East Boston property to Mohegan.[1]

The district court granted defendants' motion to dismiss. Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd., 419 F. Supp. 3d 176, 196 (D. Mass. 2019). We conclude that the case was properly dismissed, but for different reasons. Sterling has not and cannot meet the causation of injury requirements set forth at 18 U.S.C. § 1964(c).

## I.

The district court's memorandum opinion and order comprehensively describes Sterling's allegations and the Massachusetts gaming licensing process.[2] Sterling Suffolk Racecourse, LLC, 419 F. Supp. 3d at 180-89. Briefly, in 2011 Massachusetts created a competitive application process for exclusive licenses to operate casinos in Massachusetts. An Act

---

[1] Sterling also originally sued Paul Lohnes, who owned the largest stake in FBT Everett Realty, but it did not renew those claims in its amended complaint.

[2] This court has also described the Massachusetts Gaming Act in two prior cases. In 2015, we affirmed the district court's dismissal of Caesars Entertainment, Inc.'s Fifth and Fourteenth Amendment challenges to the Massachusetts Gaming Commission's denial of its licensing application, which proposed building a casino at the same East Boston Sterling-owned site identified in the Mohegan application. Caesars Mass. Mgmt. Co., LLC v. Crosby, 778 F.3d 327, 330 (1st Cir. 2015) (Souter, J.). In KG Urban Enterprises, LLC v. Patrick, 693 F.3d 1, 25, 27 (1st Cir. 2012), we affirmed the denial of a preliminary injunction seeking a declaration that the Massachusetts Gaming Act is unconstitutional under the Equal Protection Clause.

- 4 -

Establishing Expanded Gaming in the Commonwealth, 2011 Mass. Acts ch. 194 (largely codified at Mass. Gen. Laws ch. 23K). It gave the Commission the authority to grant a single exclusive gaming license for each of three regions in Massachusetts. Mass. Gen. Laws ch. 23K §§ 2, 19. Under the Massachusetts law, applicants must first show they meet the statutory and regulatory qualifications to operate a casino. See id. § 19; 205 C.M.R. 110.01, 115.00. Then, in a second step, they must demonstrate that their project better serves the interests of the local area and the Commonwealth of Massachusetts compared to the proposals of any other qualified applicants. See Mass. Gen. Laws ch. 23K § 15. If none of the applications in a given region adequately demonstrate their benefit to the local area and the Commonwealth, state law directs the Commission not to approve any application. Id. § 19(a).

In 2013 Mohegan and Wynn both applied for an exclusive license to construct a casino in Eastern Massachusetts. Wynn reached a tentative agreement with FBT Everett Realty, LLC to use its Everett property for Wynn's proposed casino. Mohegan entered into an agreement that it would in the future lease Sterling's East Boston location if Mohegan won the exclusive license and other conditions were met.

The Commission found that Wynn MA, LLC and Wynn Resorts were qualified to operate a casino. It also found that the eleven

individuals responsible for managing the project, including defendants Stephen Wynn, Kimmarie Sinatra, and Matthew Maddox, were qualified and had demonstrated good moral character. The Commission made the same finding for Mohegan and the individuals listed on its application. In a 35-page report, the Commission then concluded Wynn's proposal better served the interests of the local area and the Commonwealth. On or about November 7, 2014, it granted Wynn a license and denied Mohegan's application.

Later, the Commission revoked Stephen Wynn's good character determination, and imposed a 35 million dollar fine against Wynn Resorts when sexual misconduct allegations against Stephen Wynn came to light. None of the other individuals listed on Wynn's application were affected, and the Wynn project continued without Stephen Wynn's involvement.

Sterling subsequently brought this RICO action to recover the rents and other revenues it alleged it would have earned from a future lease from Mohegan had Mohegan been granted the license. Sterling alleges that to meet the strict regulatory requirements that Massachusetts places on casino operators, defendants concealed the sexual misconduct allegations against Wynn, failed to disclose the criminal records of project participants, provided false or misleading information about the true ownership of the project location, and paid kickbacks to local officials. Sterling claims that if defendants had acted lawfully

during the application process, the Wynn application would have been denied and the Mohegan application likely would have been approved. Assuming nothing triggered the provisions that excused performance in Mohegan's agreement to lease Sterling's East Boston site if Mohegan received the gaming license, Sterling states it would then have earned at least $3.465 billion in rental revenue over a period of 99 years.

The district court granted defendants' motion to dismiss on the grounds that Sterling had failed to allege a continuous pattern of racketeering behavior by any of the defendants. Sterling Suffolk Racecourse, 419 F. Supp. 3d at 194-95. Sterling brought this timely appeal.[3]

II.

This court "review[s] the grant of a motion to dismiss de novo." Abdisamad v. City of Lewiston, 960 F.3d 56, 59 (1st Cir. 2020) (quoting Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc., 920 F.3d 111, 114 (1st Cir. 2019)). "We are not bound by the district court's reasoning but, rather, may affirm an order of dismissal on any ground evident from the record." MacDonald v.

---

[3] Defendants moved to dismiss Sterling's appeal as untimely. Sterling filed this appeal 178 days after the district court's memorandum and order. The district court did not enter a separate judgment, so pursuant to Federal Rule of Appellate Procedure 4(a)(7)(A)(ii) the final judgment was entered 150-days after the memorandum and order. Sterling's appeal, filed 28 days later, was thus timely. Fed. R. App. P. 4(a)(1)(A).

Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014) (citing Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)).

Because Sterling has failed to make a threshold showing that it suffered any direct injury entitling it to RICO relief, we affirm the dismissal of the complaint.

RICO allows a private civil claim by "[a]ny person injured in his business or property by reason of a violation of [the criminal RICO provisions]." 18 U.S.C. § 1964(c). Three Supreme Court cases interpret "by reason of" to require that a plaintiff in a civil RICO action show that the defendant's actions were "not only . . . a 'but for' cause of [plaintiff's] injury, but . . . the proximate cause as well." Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992); see Hemi Group, LLC v. City of N.Y., 559 U.S. 1, 9 (2010) (citing Holmes, 503 U.S. at 268, 271, 274); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006). The "central question" in evaluating proximate causation in the RICO context "is whether the alleged violation led directly to the plaintiff's injuries." Anza, 547 U.S. at 461.

The Supreme Court's most recent decision in this area, Hemi, states, "[a] link [between the RICO predicate acts and plaintiff's injuries] that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient" to show proximate cause. 559 U.S. at 9 (quoting Holmes, 503 U.S. at 271, 274). This requirement reflects "[t]he general tendency of the law, in regard to damages

- 8 -

at least, . . . not to go beyond the first step." Id. at 10 (quoting Holmes, 503 U.S. at 271-72). Relatedly, the Hemi court found it highly "relevant to the RICO 'direct relationship' requirement . . . whether better situated plaintiffs would have an incentive to sue." Id. at 11-12 (citing Holmes, 503 U.S. at 269-70).

This court has identified in these Supreme Court cases "three functional factors with which to assess whether proximate cause exists under RICO." In re Neurontin Mktg. & Sales Pracs. Litig., 712 F.3d 21, 35-36 (1st Cir. 2013) (citing Holmes, 503 U.S. at 269-70). These are (1) "concerns about proof" because "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors," id. at 36 (quoting Holmes, 503 U.S. at 269); (2) "concerns about administrability and the avoidance of multiple recoveries," id.; and (3) "the societal interest in deterring illegal conduct and whether that interest would be served in a particular case," id. As to this third factor, "directly injured victims can generally be counted on to vindicate the law . . . without any of the problems attendant upon suits by plaintiffs injured more remotely." Id. (quoting Holmes, 503 U.S. at 269-70).

Applying the Hemi analysis, it is clear that Sterling has not sufficiently alleged a direct, non-contingent injury. See

559 U.S. at 9, 12.  At minimum, Mohegan, which is not involved in this suit, is a "better situated plaintiff[]" with "an incentive to sue."  Id. at 11-12 (citing Holmes, 503 U.S. at 269-70).  Mohegan was Wynn's direct competitor for the gaming license.  Sterling's theory is that Wynn's wrongful conduct cost Mohegan the gaming license, which in turn cost Sterling the benefit of a potential lease with Mohegan.  Any injury Mohegan suffered is necessarily several steps closer to Wynn's allegedly wrongful conduct.  By attempting to recover directly from Wynn, Sterling's theory of causation both "go[es] beyond the first step" of the injuries from the alleged RICO scheme and is "purely contingent."  Id. at 9, 10.

Sterling's claim "go[es] beyond the first step" of injuries from the conspiracy because it is entirely derivative of Mohegan's injury.  Sterling is in the same position as any third-party business which hoped for a major contract from the Mohegan casino project, and lost that potential for business revenues when Mohegan lost the application bid.[4]  This injury is at least as

---

[4]     Sterling argues that it is unique from other third-party businesses because it was closely connected to Mohegan's application and "the driving force" behind the Mohegan project. These arguments are meritless.  The Commission's review of the Sterling site was the same as its review of other key vendors and employees.  See Mass. Gen. Laws ch. 23K § 16.  And nothing in the RICO Act or subsequent case law carves out an exception to the stringent proximate causation requirements for businesses that are highly motivated or financially reliant on doing business with the direct victim of the RICO conspiracy.

remote from the alleged RICO conduct as the claims rejected in Holmes, Anza, and Hemi. See Holmes, 503 U.S. at 261-62 (holding that a Securities Investor Protection Corporation (SIPC) could not recover under RICO for stock-manipulation scheme that bankrupted broker-dealers, triggering a statutory requirement that SIPC meet the broker-dealers' obligations to their customers); Anza, 547 U.S. at 457-58 (holding that a business could not recover against its competitor for a scheme to defraud the New York State tax authority that allowed the defendant to undercut the plaintiff's prices); Hemi, 559 U.S. at 6-8, 18 (holding that the City of New York could not recover for online cigarette retailers' failure to provide accurate tax information to the State of New York, hindering New York City's efforts to collect taxes from cigarette customers).

Moreover, any causal link between Wynn's conduct and Sterling's lost rental income is "purely contingent." Holmes, 503 U.S. at 271. Sterling's agreement with Mohegan imposed conditions that may have excused performance regardless of whether Mohegan obtained a license from the Commission. Mohegan was released from any obligation to perform in the event of a "Material Adverse Change" affecting the lease, including if construction took longer than two years for any reason outside of its control, or if local authorities other than the Commission refused to approve the project.

- 11 -

These problems with Sterling's theory of causation cause it to fail under each of the three functional factors laid out in In re Neurontin. 712 F.3d at 36. Its claim raises difficult issues of proof as to whether the conditions in Sterling's agreement with Mohegan would have been satisfied in full. It also presents a substantial risk of double recovery, because Mohegan has more direct, less contingent potential claims. There were surely others who also expected a substantial financial benefit from the Mohegan project. And, as described, Mohegan, not Sterling, is the "directly injured" party who can be "counted on to vindicate the law . . . without any of the problems attendant upon suits by plaintiffs injured more remotely." Id. (quoting Holmes, 503 U.S. at 269-70).

None of the Supreme Court or circuit case law that Sterling cites support its argument that persons who do business with an entity harmed by a RICO conspiracy may recover against the conspirators. Rather, each simply states that in some circumstances fraudulent statements to one party may directly and exclusively financially injure another party. In Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 644-45, 649-50 (2008), the Supreme Court held that plaintiffs plausibly alleged that false statements to the county treasurer regarding lien auctions injured the counterbidders, not the treasurer. In In re Neurontin, 712 F.3d at 41-43, and In re Celexa & Lexapro Marketing & Sales Practices

Litigation, 915 F.3d 1, 14 (1st Cir. 2019), this court held there was sufficient evidence that false marketing to doctors harmed the insurance companies who paid for the ineffective prescriptions, not the doctors who issued those prescriptions.  These cases do not support Sterling's claim of injury.

In these circumstances, Sterling cannot show a "direct injury" from Wynn's actions, and so its RICO claims fail as a matter of law.

## III.

The judgment of the district court is affirmed.